Denied.

25 C.C.P.A. (Patents)

## RITZERFELD v. KLUITMANN.
### Patent Appeal No. 3903.

Court of Customs and Patent Appeals.
Feb. 7, 1938.

Anthony William Deller, of New York City, for appellant.

Arthur W. Carlson and Max W. Zabel, both of Chicago, Ill., for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

This is an appeal in a patent interference proceeding from a decision of the Board of Appeals of the United States Patent Office affirming that of the Examiner of Interferences in awarding to appellee priority of invention in the five counts involved relating to copying or duplicating machines.

During the motion period before the Primary Examiner, the counts here involved were added to the interference which had previously been declared upon a count which is not involved in this appeal. The sole question for our decision upon which priority depends is the right of the party Kluitmann to make the counts, which question involves the operativeness of the Kluitmann structure. No testimony was taken. Priority of the counts involved was awarded to Kluitmann following an order to show cause why judgment should not be entered against Ritzerfeld. Following the order to show cause why judgment on the record should not be entered against him

as to counts 1 to 5, Ritzerfeld moved to dissolve the interference on the ground that Kluitmann's application failed to comply with R.S. § 4888, as amended, 35 U.S.C.A. § 33, that his disclosure was vague and indefinite, and that the Kluitmann machine, as shown in his drawings and specification, was inoperative.

Count 1 is illustrative of the five counts at bar and reads: "1. A machine of the character described comprising a cylindrical printing drum, means for continuously rotating said drum, a gripper on said drum for securing one edge of a flexible master sheet to said drum, a control mechanism, means operable by said control mechanism when operated to actuate said gripper so that at a given angular position of said drum said gripper is moved to its sheet releasing condition during the continuous rotation of said drum whereby an imprisoned master sheet is released from said drum, and a feed device for master sheets under the partial control of said control mechanism whereby the protruding edge of a second master sheet may be moved toward said drum to place said edge of said second sheet in gripping relationship to said gripper, said gripper actuating means having means thereafter to automatically release said gripper thus to imprison said second sheet on said drum, whereby master sheets may be replaced during the continuous rotation of said drum."

Appellant, Ritzerfeld, has filed in this court a brief consisting of 70 pages, most of which is devoted to a discussion of matters with which we are not here concerned and most of appellant's reasons of appeal seek to present questions which, under the well-settled rules, may not be considered in this kind of proceeding. He argues at great length that the counts are unpatentable over the prior art. It requires no citation of authority to support the well-understood rule of procedure in this court in this kind of proceeding that the patentability of counts is not a matter to be taken cognizance of in determining priority of invention.

It is also argued at some length that the Kluitmann application disclosure is so fatally defective that it does not comply with the patent statutes. This contention goes to patentability and can receive no attention here.

Appellant also argues at some length that the interference was informally declared, the argument being predicated to some

extent at least upon the contention that the inventions of the two parties are wholly dissimilar and that under the rules of the Patent Office an interference can be declared only in event that there is "common patentable subject matter" claimed in a plurality of applications or in an application and a patent. Again, in arguing that the interference was informally declared, support for appellant's contention is based upon the alleged nonpatentability of the subject matter of the counts. This argument, of course, also seeks to raise a question going to patentability only.

Appellant, however, has presented, by certain of his reasons of appeal, a contention which goes to the right of the party Kluitmann to make the counts. This contention is, in part, based upon the assertion that the Kluitmann structure as described in his specification is inoperative. One reason of appeal seeks to raise the question that the counts of the ·interference are broader than the Kluitmann invention. This last referred to reason, we think, also goes to the question of patentability.

We are, therefore, remitted here to a consideration of the question of the right of the party Kluitmann to make the counts which involves a consideration of the question as to whether or not the device as disclosed and described in the Kluitmann application is inoperative.

The invention in issue is well described by the Primary Examiner in the following language:

"The invention in issue·relates to a copying machine of the rotary type. Such machines are used for reproducing matter written or printed in reverse with a copiable or transferrable ink. The reversed characters are commonly formed by typewriting on a sheet of paper with a sheet of aniline or 'copying' carbon paper against the back of the first sheet, so that characters are formed in reverse. This paper sheet is called an 'original.' Copies are made by moistening blank sheets of paper with a solvent for the copying ink, and pressing them against the original. In rotary machines this is done by securing the original to a drum, moistening the blank sheets as they are fed, and pressing them against the original by means of a platen roll.

"In the prior art, whenever it was desired to change originals, it was necessary to stop the machine, unlock the gripper member holding the sheet, remove the old and insert the new original, close the gripper, and resume operation.

"The invention in issue provides automatic means for changing the original without interrupting the operation of the machine. This is done by providing a movable table to hold the new original and advance it to the drum, and a cam movable when the table is moved to open the grippers, release the old sheet, and grasp the new one, while the machine continues in motion. Whenever the operator desires to change to another original, he tilts the table toward the drum. This places the end of the new sheet in position to be grasped by the grippers, and also sets the cam to open the grippers and also to close them at the proper time."

It will be noticed that count 1 states that the machine comprises:

"1. A drum

"2. Means for continuously rotating said drum

"3. A gripper

"4. A control mechanism

"5. Means operable by said control mechanism to actuate said gripper producing certain results which the count recites

"6. A feed device for master sheets under the partial control of said control mechanism

"7. Said gripper actuating means having means thereafter to automatically release said gripper."

It is pointed out by the Examiner and the Board that Kluitmann's drawings and specification disclose every one of the above-named elements of the claim. The Examiner, as to count 1, which was then known as count A, said: "Kluitmann moves to add six counts. As to proposed count A, he points out the printing drum 2, the drawing shows a drive shaft and Kluitmann's specification mentions the use of a crank or motor * * * for imparting continuous rotation, gripper means are shown at 8, control means at 3, 5, gripper actuating means (cam 6) operated by the control means, feed device (table 1) under the partial control of the control mechanism, with the gripper actuating means (cam 6) having means (the shoulder on the cam) for releasing the gripper to imprison the second sheet, etc. Thus it is clear that he shows every element of this count. In view of the fact, as noted above, that grippers are commonly held closed by springs, and that

the use of a spring here would be obvious, it is believed that the proposed count A is readable on Kluitmann's disclosure, and also is patentable. * * *"

He then points out that count 2 (then count B) specifically includes a cam which is shown by Kluitmann; that claim 3 (then count C) claims the cam more broadly as a "means" but is specific as to the table and that Kluitmann shows the table. Concerning count 4 (then count D) the Examiner points out that Kluitmann shows the various elements of the count including a means selectively operable whereby the sheet may be replaced. Ritzerfeld urges that this means is inoperative and further that this was a "single means" which plus its function does not sufficiently define the invention. The Examiner points out that the means was not a single means but that it was included in combination with several other elements. As to the inoperative feature, the Examiner held that the alleged inoperative means consisted of a table that is movable in timed relation to other elements. Most of the argument of appellant on this subject before the Examiner was made as to the original count in the interference as originally declared concerning which the motion to dissolve was granted. That count, as before stated, is not before us.

Ritzerfeld, before the Examiner, did not contend that count 4 was not patentable in substance. The Examiner stated: " * * * It is not alleged that the count is not patentable in substance. It is held to be proper in form, patentable in subject matter, and readable upon both parties."

The same holding was made as to count 5.

As to count 6, Ritzerfeld contended that the "cam for controlling the movement" of the table was not shown. The Examiner held that this point was well taken, that the count was not readable upon either party, was misdescriptive, and should not be added to the interference. No appeal was taken from this action by either party.

To the above action of the Examiner Ritzerfeld responded by requesting reconsideration of the Examiner's decision on Ritzerfeld's motion to dissolve and on Kluitmann's motion to add the counts here involved. It was then contended by Ritzerfeld that the motion to amend should not have been granted as to counts 1 to 5 and based his request for reconsideration upon the grounds heretofore stated and in addition upon the ground that Kluitmann had no right to make the claims corresponding to proposed counts 1 to 5.

The Examiner again discussed his former ruling, pointed out wherein Kluitmann showed the elements of the counts, and on the subject of inoperativeness stated: "As to the third ground, it is urged again that Kluitmann has not disclosed an operative structure. It is said that since the table is pulled forward by the drum, it travels only at the same speed as the drum, hence can never catch up with it to insert a sheet under the gripper. But this is not the manner in which the Kluitmann device is intended to operate. The sheet is laid on the table with its edge projecting considerably so that as the table starts forward with the cylinder the end of the sheet is far enough forward that the descending gripper will close upon it. There is no question of changing machine structure—merely the simple problem of placing the sheet far enough forward on the table. Far from 'endeavoring to excuse the party Kluitmann' by holding that 'missing things would be obvious,' the Examiner has merely pointed out that no element of the proposed counts is missing and that if *in other respects* the disclosure is informal, for example if the sheet of paper on the table is shown as not projecting far enough, it would be permissible for Kluitmann to amend the drawing. Of course no new matter may be introduced, and no attempt has been made to introduce any such matter. If the sheet is placed at a point where the gripper will close on it, there seems to be no question that the Kluitmann machine will operate in the manner intended. It is held, therefore, that the third ground must fail to change the Examiner's holding."

Upon the record as above shown the Examiner of Interferences awarded the senior party Kluitmann priority of invention of the subject matter of the issue in the five counts involved.

Upon appeal to the Board, it, for the same reasons as those assigned by the Examiner, but by the use of somewhat different language, affirmed the action of the Examiner of Interferences and pointed out that Kluitmann disclosed the various elements of the counts, and on the subject of inoperativeness said:

"We have given careful consideration to Kluitmann's contended mode of opera-

tion of his device as shown and are convinced that the parts as shown can operate in the manner claimed. There is such angular relation between the arc of swing of the ends of the clamping fingers, due to the fact that pivot 9 is placed interiorly of the periphery of the drum, that the ends of the clamping segments may come down on top of the sheets after it has slipped off of or even grazed their tip ends, that is, the arc of swing of the ends of the fingers inclines downwardly toward the left (Fig. 3) or towards the edge of the paper. We agree with Kluitmann's contention that the counts which are directed to the machine do not necessarily involve the sheet as an element, particularly, when not included as an element. It seems that in this case the printing sheet may optionally be regarded as part of the work rather than part of the machine. The counts only indirectly refer to it in the clause, 'a gripper on the drum for securing one edge of a flexible master sheet to said drum'. We hold further that mere inadvertent showing of the edge of the sheet slightly too far to the left under such circumstances, that is, where it is not an element of the machine, is not so vital or critical as to be fatal to Kluitmann's case. We think it is clearly within the skill of any one undertaking the operation of Kluitmann's machine to observe that the front edge of the sheet should be fairly critically adjusted and to so position the sheet on table 1 even by adjustment of the stop pins 25, 26 if necessary.

"We accordingly agree with the conclusions of the Primary Examiner in this respect and affirm the decision of the Examiner of Interferences as based upon his order to show cause."

We have carefully considered the arguments made by appellant, Ritzerfeld, in this court. We are in accord with the views expressed by the Primary Examiner and the Board of Appeals. That the various elements of the counts are shown in Kluitmann's disclosure cannot seriously be controverted, and a complete restatement of what has been so clearly stated on this subject by the tribunals below would be mere surplusage.

As to the inoperative feature contended for by Ritzerfeld, we are of the opinion that the Board correctly concluded, as did the Primary Examiner, that the machine does not necessarily involve the sheet of paper as an element. It is not included as an element in the count. It is our view that the inadvertent showing of the edge of the sheet slightly too far to the left is not so vital or critical as to be fatal to the Kluitmann case since the paper cannot be regarded as a part of the machine.

We conclude that the board correctly ruled that Kluitmann could make the counts and that his device was operative. It follows that its decision affirming that of the Examiner of Interferences in awarding priority to Kluitmann should be, and it is, affirmed.

Affirmed.