59 CCPA

**Richard G. RION et al., Appellants,**

v.

**Alfred S. AULT et al., Appellees.**

**Patent Appeal No. 8591.**

United States Court of Customs and Patent Appeals.

Feb. 24, 1972.

Worley, C. J., took no part in decision.

Milton L. Simmons, attorney of record, for appellants.

Otto R. Krause, Hill, Sherman, Meroni, Gross & Simpson, Chicago, Ill., attorneys of record, for appellees.

Before WORLEY, Chief Judge, and RICH, ALMOND, BALDWIN and LANE, Judges.

RICH, Judge.

This appeal is from the decision of the Board of Patent Interferences awarding priority to Ault et al., the senior party.[1] Rion et al.[2] appeal solely as to an issue which they assert, and which Ault denies, is ancillary to priority as hereinafter explained. We reverse and remand because we find there is no interference in fact.

1. Ault, Johnson, and Van Dolah, involved on their application No. 86,570, filed February 2, 1961.

*The Counts*

The parties' inventions are both in the field of making vitreous enamels such as are applied to bathroom fixtures, kitchen sinks, and the like having a cast iron base. The counts recite a method of making a titania-opacified porcelain enamel frit and the frit made by that method. Frit is the intermediate, particulate glass material from which the enamel is formed in situ by fusion. We reproduce only the first count (subparagraphing and emphasis of the terminology principally in issue supplied):

1. The method of making an improved titania opacified porcelain enamel frit for dry process application which comprises

fritting a molten silicate glass composition containing from about 8% to about 24% titanium dioxide by weight and

thereafter heat treating the fritted particles *at a temperature sufficiently above the frit softening point, but below its fusion point*, for a time period sufficient to cause nucleation of at least some of the titanium dioxide therein.

The counts are hybrids proposed by the examiner, and it was his use of the terms "softening point" and "fusion point" which has led to this appeal. The former expression was taken from appellees' specification, in which it is stated that

The range of heat treating temperatures extends from a temperature more than 100°F. above the *softening point* of the glass, but not more than 400°F. above the *softening point* of the glass *as measured by an interferometer.* [Emphasis ours.]

The expression "fusion point" was taken from appellants' specification, in which it is stated that the heat treating of the

2. Rion, Burgyan, Bersticker, and Sweo, involved on their application No. 252,622, filed January 21, 1963, as a continuation-in-part of their application No. 127,472, filed July 28, 1961.

fritted particles takes place "between 600°F. and 1300°F., [but] below fusion point of said frit." However, appellants' specification does not define "fusion point" or state how the fusion point of a particular frit can be measured.

*Background*

It is now and throughout this interference has been appellant Rion's contention that the terms "softening point" and "fusion point" are equivalent in this art. He has stated that,

> While it is true that in the formed or flat glass industry, a distinction might be drawn between softening point and fusion point, this does not extend to porcelain enamels.

Pursuant to this contention, Rion brought three separate motions to dissolve the interference. The first was on the ground that the counts "are vague and indefinite constituting an informality in the declaration of such nature as to preclude a proper and adequate determination of the question of priority." The second was on the ground that the counts "are unpatentable as being barred by * * * printed publications and patents * * * which * * * stand as a bar under 35 USC 102(b) and 35 USC 103 to patentability of the counts herein." The third was on the ground that "the parties Ault et al. cannot make the counts because the disclosure of the parties Ault et al., as to the specific limitations of the count, is so vague and indefinite as to fail to support same." However, as the primary examiner held in denying all three motions, the second and third motions were "based on the assumption that the party Rion succeeded in establishing in the motion to dissolve on ground (1), the equivalency of the terms as used in the counts viz 'softening point' and 'fusion point'."

The primary examiner held, without citation of authority, that

> The art knows from observation and experience that the interferometer point applies to the point at which the glass *begins to soften*, and fusion flow [3] applies to the point at which the softened glass becomes molten and flows. [Emphasis in the original.]

The primary examiner also pointed to the statement in Ault's specification that "For best results, the temperature should be below the point where tackiness occurs in the glass," stating that

> "Tackiness" describes a sticky or adhesive state, which when said of Ault's glass would be recognized by one practicing Ault's teaching as a softened state in which the glass is close to but below the fusion point.

Rion's request for reconsideration was granted, but their motions were again denied. The opinion of the different examiner who rendered the decision thereon noted that

> In a further effort to clarify their position they [Rion et al.] include a chart at page 3 by which they seek to persuade that they operate at mutually exclusive heating ranges from the party Ault * * *

but concluded that

> *Since both disclosures show reheating at 1100°F.* (Ault at page 8 and Rion at page 15), the Rion chart is not found to have a basis illustrative of the facts as disclosed. [Emphasis ours.]

However, it should be pointed out, first, that the composition of the frit which Ault heat treated at 1100°F. was not the same as the composition of the frit which Rion heat treated at 1100°F. and, second, that Ault heat treated the frit at that temperature for six minutes while

---

3. It should be noted that the primary examiner referred to "fusion flow" rather than to *the* "fusion point." Appellants concede that, as one of the appellees testified, fusion *flow* takes place at temperatures above that of the interferometer softening point (which appellants maintain is likewise the interferometer *fusion* point), but appellants contend that "there is absolutely no connection between fusion flow * * * and *fusion point*" and that the word "point" "may *not* be disregarded in the counts."

Rion heat treated the frit at that temperature for "about ten minutes." Note that the counts relate temperature to "softening point" and "fusion point" and that different compositions may have such point or points at different temperatures.

Rion thereafter petitioned the Commissioner, asking him to dissolve the interference in the exercise of his supervisory authority. This the First Assistant Commissioner declined to do on the ground that the primary examiner's decision involved no "manifest error or abuse of discretion."

At final hearing, Rion again contended that

> * * * the expressions "fusion point" and "softening point" define the same temperature and since Ault et al. disclose heat treatment only at temperatures above the softening point of the fritted enamel particles, Ault et al's. process neither supports the counts *nor is directed to the same process defined by Rion et al.* [Emphasis ours.]

The board's original opinion, however, treats only the first part of Rion's contention:

> The heat treatment of the counts defines a temperature range or the transition between a point where the glass begins to soften and where it becomes molten. This is the definition placed on the counts by the Primary Examiner who, in drafting said counts for interference purposes, set forth the bounds to which the priority proofs of the parties would be limited. Under the circumstances of this case, particularly in view of the fact that neither party sought to change or modify the language of the counts, the definition of the terms of the counts by the Primary Examiner is controlling notwithstanding any alleged inconsistency with the technical definitions of the softening point and fusion point not found within the disclosures of the applications involved. Since the counts, as drafted and defined by the Primary Examiner, are broad enough to include within their scope the invention disclosed by the Ault et al. application, Ault et al. have the right to make the counts.

In response to Rion's petition for reconsideration, the board further stated:

> With regard to Rion et al.'s contention that there is no definition of the express limitations "fusion point" and "softening point" in the record and that the only discussion by the Primary Examiner thereof is found on pages 6 and 7 of his Decision on Motions, we remain of the opinion that the Primary Examiner's decision when considered in its entirety (especially pages 4 and 5 as well as 6 and 7) clearly and unambiguously defines the meaning of "fusion point" and "softening point" insofar as the invention involved herein is concerned. Furthermore, as correctly pointed out by Ault et al. in their reply, the question of the definiteness of the counts is not ancillary to priority. The interference counts must be given the broadest interpretation their language will reasonably support; we have found the Primary Examiner's interpretation thereof to be reasonable and broad enough to include the inventions as defined by both parties in their respective applications. Note Kropa v. Robie et al., [187 F.2d 150] 38 CCPA 858, and Ludwig v. Sohn et al., [324 F.2d 1004] 51 CCPA 796, cited by us in our decision.

## OPINION

### I. *Motion to Dismiss*

■ A preliminary matter requires comment before we come to the merits of this controversy. Appellees moved in this court to dismiss this appeal on the ground that the gist of appellants' complaint was that the counts are *indefinite*, that that issue is not ancillary to priority, and that the Patent Office's determination that the counts are not indefinite was therefore not reviewable by this court. Appellants opposed that motion, it was denied, and appellants now argue that appellees can no longer question the

jurisdiction of this court to hear this appeal because that issue "has already been decided." However, questions of jurisdiction can be raised at any time, and the denial of appellees' motion must be regarded as inherently without prejudice to raising the question at final hearing. It has been so raised in appellees' brief, and we regard the jurisdictional issue as before us again.

## II. *Jurisdiction*

Appellees argue that

> If one were to accept * * * [appellants' interpretation of the terms "softening point" and "fusion point"], one would no longer have a count to interpret because the count presupposes the existence of a range of temperatures between "softening point" and "fusion point". Accepting the appellants' interpretation of the counts, therefore, would make the counts completely indefinite * * *

and they cite many authorities[4] for the proposition that the question of the indefiniteness of the counts is not ancillary to priority, is therefore not within the statutory jurisdiction of the Board of Patent Interferences, and therefore is not within our jurisdiction.

■ We disagree with the premise, at least,[5] of this multistep argument. The issue here is the existence of an interference in fact,[6] and we think that it can no longer be questioned that both the Board of Patent Interferences and this court have jurisdiction over that issue.

Brailsford v. Lavet, 318 F.2d 942, 50 CCPA 1367 (1963).

## III. *Interference in Fact*

Appellants' specification does not define the term "fusion point" nor does it explain how the fusion point of a given frit may be measured. Instead, they maintain that the term has a generally accepted meaning in the porcelain enamelers' art, and that their specification must be interpreted as it would be by one skilled in that particular art, and that to one so skilled the term means precisely the same thing as the term "softening point." In support of this argument, they have referred to the treatise Porcelain Enamels (2d ed. 1961) by the late Dr. A. I. Andrews, who seems to have been an eminent authority in the field. At page 465, in Chapter 12, entitled "Enamel Properties and Tests," the following paragraph appears:

> The Interferometer Test. In determining the coefficient of expansion of glasses by means of the interferometer, the expansion curve reverses when the enamel begins to soften (Figure 12). This offers a method for determining the fusion point of enamels, but it requires considerable equipment and technique, which limits its field of application. It is reproducible within 10°F. and is a definite value, which makes possible the comparison of different enamels.

On cross-examination, Van Dolah, one of the appellees, conceded that Dr. Andrews

---

4. Ray v. Kronmiller, 167 F.2d 518, 35 CCPA 1085 (1948); Ritzerfeld v. Kluitmann, 94 F.2d 392, 25 CCPA 845 (1938); Schuster v. Brown, 69 F.2d 373, 21 CCPA 932 (1934); and Kreek, Ancillary and Non-ancillary Matters in Patent Interferences, 36 JPOS 7, 15 (1954).

5. In Myers v. Feigelman, Cust. & Pat.App., 455 F.2d 596, decided herewith, we point out that certain issues are within the jurisdiction of both the Board of Patent Interferences and of this court on appeal therefrom though not, strictly speaking, either questions of priority or questions "ancillary" to priority.

6. It must be conceded that appellants have not expressly so characterized their grounds of appeal but argue it, rather, on the basis of support for the counts or right to make them. However, as in Brailsford v. Lavet, 318 F.2d 942, 945, 50 CCPA 1367, 1371 "the only construction we can logically place on * * * [appellants' arguments is that he is charging] that the board erred in implicitly finding an interference *in fact* between the parties." (Emphasis in the original; footnote omitted.)

had stated in this paragraph that "fusion point is the same as interferometer softening point * * *." Mr. Van Dolah also stated that it was his belief that

> * * * if you would take a cross-section of the people in the porcelain enamel industry and ask them what "fusion point" is, * * * you will find the majority would not say "softening point."

However, appellants' expert witness, a Professor of Ceramic Engineering and head of the Department of Ceramic Engineering at the University of Illinois, speaking with respect to a given glass or frit and the temperature at which the interferometer softening point occurs and the temperature at which the fusion point occurs, testified unequivocally that

> There isn't any difference. They are identical. Fusion point and softening point are one and the same thing. Sometimes it is called the fusion temperature or softening temperature, but they are identical.

■ On the basis of this record, we conclude that the two terms refer to the same temperature for a given frit and that therefore the parties did not make the same invention. Appellants' invention involves heat treating particular frit *below* the fusion-softening point thereof, while appellees' invention involves heat treating such frit more than 100°F. *above* the softening-fusion point thereof. On the face of the matter and without any evidence to the contrary, we cannot believe that, if the two terms in controversy mean the same thing, the difference in temperature ranges is an "immaterial" difference. Thus we conclude

that there is no interference in fact between the applications of the parties,[7] and we accordingly *reverse* the decision of the board implicitly holding such an interference to exist and *remand* this case for further proceedings not inconsistent with this opinion.

### IV. *Taxation of Costs*

■■ There remains the question of taxing costs for two additions to the record requested by appellees. The first consists of 247 pages of testimony by appellees' witnesses, predominantly on the issue of priority. Appellees argue that appellants should pay for this addition in its entirety because their reasons of appeal indicated that they would appeal the adverse determination of priority below and, in the alternative, that appellants should at least pay for the printing of Van Dolah's testimony because they relied on it in their brief. On the first point, appellants argue that appellees should have to pay for the printing of their priority evidence because they knew in advance that they would not have to rely on it because appellants did not include in the record for appeal any of their testimony on the question of "date" priority. On the second point, they argue that they "need not have relied on any of appellee's [sic] voluminous, and for the purposes of this appeal, useless, testimony, since the equivalency of fusion and softening point were well established by Drs. Andrews * * * and Friedberg." We agree with appellants on the first point but with appellees on the second. Thus, appellants are to pay for the printing of Mr. Van Dolah's testimony, but appellees are to pay for the rest of the first addition.

7. Appellees have not argued that their evidence established an art-recognized meaning of the term "fusion point" which differs from the definition advanced by appellants. Instead, they have relied on their contention, rejected supra part II of this opinion, that this court has no authority to review the Patent Office's decision on this point and on the contention that "The Definition of 'Fusion Point' Now Urged by Appellants Is Inconsistent With the Statements Made In Their File History." Essentially, it is their contention on this point that the term "fusion point" was new matter *when it was introduced into appellants' parent application.* If that is so, it may be grounds for rejecting their application ex parte, on the basis of intervening art, but it avails appellees nothing in this proceeding. All we have determined is that the inventions which the two parties are *now* claiming are different, not that either one is patentable to the party claiming it.

The second addition consists of the file history of appellants' parent application. For the reasons given in the previous section, we think that the contents of this file history are irrelevant here, and we accordingly assess the cost of printing it against appellees.

Reversed and remanded.

WORLEY, C. J., took no part in the decision of this case.