**Paul Herman SQUIRES, Appellant,**

v.

**Herbert O. CORBETT, Appellee.**

**Patent Appeal No. 76–693.**

United States Court of Customs and Patent Appeals.

Aug. 4, 1977.

**426**

Richard L. Schwaab, Bacon & Thomas, Arlington, Va., attorneys of record, for appellant.

Stephen D. Murphy, Scully, Scott, Murphy & Presser, Garden City, N. Y., attorneys of record, for appellee.

Before MARKEY, Chief Judge, RICH, BALDWIN and MILLER, Judges, and FREDERICK LANDIS, Associate Judge, United States Customs Court.

RICH, Judge.

This appeal is from the March 16, 1976 decision of the Patent and Trademark Office (PTO) Board of Patent Interferences (board) awarding priority of invention as to the single count in interference No. 98,315 to senior party Corbett. We affirm.

Corbett is involved on application Serial No. 654,941, entitled "Method of Extruding Laminated Film," filed May 26, 1967, as a division of application serial No. 350,220, filed March 9, 1964, the latter hereinafter called the "parent application." These two applications have identical disclosures. Junior party Squires is involved on U. S. Patent No. 3,476,627, issued November 4, 1969, on application serial No. 542,066, filed April 12, 1966, entitled "Process for Coextruding Multiple-Layered Thermoplastic Sheeting." Both parties took testimony.

*The Issue*

Squires' patent claim 1 was copied exactly into Corbett's application and is the sole count in interference. It reads (emphasis ours):

1. A process for the extrusion of *multiple-layered sheeting* of thermoplastic resin, said process comprising the steps of

(a) *joining in a tube, at least two* laminar-flow streams of molten thermoplastic resin into a combined stream of molten thermoplastic resin which has a sharply defined juncture between the components of the combined stream,

(b) passing said combined stream of molten thermoplastic resin into a manifold of a *sheeting extrusion die* the juncture plane(s) between each of the individual molten thermoplastic resin components within the manifold being parallel to the principal direction of flow of the resin as it passes from the manifold and *takes on the shape of sheeting*, and

(c) whereby a *multiple-layered sheeting* wherein the individual layers of thermoplastic resin are of substantially uniform thickness over substantially all of the width of the sheeting is formed.

Squires concedes that Corbett was the first inventor of the subject matter described in the Corbett application but contends, in essence, that the invention so described is not the invention defined by Squires' patent claim 1. The issue was raised below by Squires' motion to dissolve under 37 CFR 1.231[1] alleging that since Corbett did not disclose the invention defined by the copied claim, Corbett had no "right to make" the copied claim. The motion was denied at final hearing, hence this appeal from the board's disposition of that ancillary issue.

*The Disclosures*

The Squires patent discloses extrusion processes for forming multiple-layer thermoplastic "sheeting"[2] such as that used as an interlayer in safety glass laminates. The process entails joining at least two streams of plastic extrudate in the inlet pipe upstream from the manifold of a sheeting die. As shown below in Fig. 1, two streams, 2 and 3, from extruders 1 and 1', are joined in a Y-shaped tube entering sheeting die 5. Squires requires the flow of the streams, where joined, to be laminar, that is, non-turbulent, so as to form a sharply defined juncture 4 between the layers. Fig. 1 is a schematic of the apparatus as seen from below. Fig. 2 shows the laminar sheet being extruded downwardly through lips 6. That two layers of non-uniform thickness (semi-circular in cross section) could be fed to a sheeting die and still produce a product of uniform layer thickness, as shown in Fig. 2, is alleged by Squires to have been unexpected.

SQUIRES

FIG. 1

FIG. 2

Corbett discloses extrusion processes for making laminar "films," particularly thin films less than 10 mils thick which he distinguishes from "sheets." Such films may be used, for example, in packaging applications. In the extrusion process, streams of plastic extrudate are joined and laterally expanded, as in a fan-shaped die, prior to discharge. Like Squires, Corbett recognizes that the streams must be joined while in laminar flow to avoid mixing. Two basic

1. 37 CFR 1.231 reads, in pertinent part:

§ 1.231 *Motions before the primary examiner.*

(a) Within the period set in the notice of interference for filing motions any party to an interference may file a motion seeking:.

(1) To dissolve as to one or more counts, except that such motion based on facts sought to be established by affidavits, declarations or evidence outside of official records and printed publications will not normally be considered, and when one of the parties to the interference is a patentee, no motion to dissolve on the ground that the subject matter of the count is unpatentable to all parties or is unpatentable to the patentee will be considered, except that a motion to dissolve as to the patentee may be brought which is limited to such matters as

may be considered at final hearing (§ 1.258). Where a motion to dissolve is based on prior art, service on opposing parties must include copies of such prior art. A motion to dissolve on the ground that there is no interference in fact will not be considered unless the interference involves a design or plant patent or application or unless it relates to a count which differs from the corresponding claim of an involved patent or of one or more of the involved applications as provided in §§ 1.203(a) and 1.205(a).

2. The term "sheeting," as used by Squires, means a product with an overall thickness of at least five mils as extruded.

embodiments are disclosed, the first involving joining *two or more* streams in a die having a tubular orifice formed between an internal mandrel and the die body so as to produce a *tubular* product. In the second embodiment, *three or more* streams are joined in a *flat sheet* extrusion apparatus. At the beginning of the Corbett specification, however, the invention is generically described as follows (emphasis ours):

> This invention relates to * * * the production of laminated products wherein *two or more* overlying and coextensive fluid films are formed with laminar flow * * *. By laminar flow is meant the flow of *two or more* adjacent streams without turbulence so there is no mixing of the materials of the streams.

Corbett seems to rely on the disclosure of the sheet-forming embodiment to support the limitations of the copied claim.

In the flat sheet extrusion embodiment illustrated in Fig. 4, below, the outputs from two extruders are joined upstream from die lips 52 and 53. The extrudate from a first extruder 57 is split in "diverter plate" 62 into *two streams* which flow through channels 63a and 63b. These two streams are joined with the extrudate of a second extruder (not shown) which forms a centrally disposed layer when introduced through orifice 66 via channel 65 in diverter element [64] carried in plate 62. Joinder occurs in the passageway 51a in element 51. Additional layers may be added through additional orifices in the wall of passageway 51a, and the thickness of the layers may be varied by laterally varying the width and the location of the diverter and the size of orifice 66. As shown in Fig. 10, an enlarged fragmentary section of product, the illustrated sheet-extruding embodiment forms a three-layer structure. (The actual thickness of the composite film in Fig. 10 is stated to be 5 to 12 mils.)

CORBETT

_FIG. 1._

_FIG. 10._

---

*Background*

When Corbett first copied Squires' patent claim 1 during ex parte prosecution, the examiner, believing that the Corbett disclosure did not support the claim in a number of respects, rejected the copied claim under 35 U.S.C. § 112, first paragraph.[3] The Board of Appeals reversed this rejection relying, at least in part, on the disclosure of the tubular extrusion embodiment to support various limitations in the copied claim.

3. This statute reads:
 § 112. *Specification*
 The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most

This interference was declared and, during the motions period, Squires made the aforementioned motion to dissolve.

The substance of Squires' attack on Corbett's right to make the copied claim may be summarized as follows:

(1) Squires' claim 1 cannot be construed so broadly that it reads on Corbett's film extrusion process because the claim would then be anticipated by a reference patent over which the claim was allowed;[4]

nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

4. Breidt, Jr., et al., U. S. Patent No. 3,399,105 issued August 27, 1968, is said to disclose a complex die-within-a-die multiple-layer extru-

(2) Corbett does not disclose the formation of thick "sheeting," more particularly, sheeting in excess of 10 mils in thickness;

(3) Corbett discloses joining the streams within a rectangular die body rather than "joining in a tube" outside the die; and

(4) Corbett does not disclose joining *two* laminar flow streams but, instead, discloses joining three or more streams.

Squires additionally alleged, as part of his motion, that an incident of these deficiencies in Corbett's disclosure was to preclude Corbett's reliance on his parent application for an earlier *effective filing date.*

 Decision on the motion was deferred until final hearing, as provided by 37 CFR 1.231(d),[5] in view of the Board of Appeals decision, although the Board of Patent Interferences was not bound thereby. *Sze v. Bloch,* 458 F.2d 137, 59 CCPA 983, 173 USPQ 498 (1972).

*The Board Opinion*

The board treated Squires' motion as (1) a motion to dissolve based on Corbett's alleged failure to support the limitations of the copied claim in the instant application, and (2) a motion to deny Corbett the benefit of his parent application filing date based on the alleged absence from the parent of 35 U.S.C. § 112, first paragraph,

support for the limitations of the copied claim as required by 35 U.S.C. § 120.[6] The board noted that the parent and the application at bar are "substantially identical" and concluded that both motions turn on "whether Corbett discloses a species falling within the generic invention defined by the count." The board continued, saying:

A constructive reduction to practice of a species falling within a generic count constitutes a constructive reduction to practice of the generic invention. *Den Beste v. Martin,* 252 F.2d 302, 45 C.C.P.A. 798, 116 U.S.P.Q. 584 (1958). Our decision with respect to sufficiency of disclosure will apply equally to a motion for benefit of the parent as to a motion to dissolve as to the divisional.

The board found the copied claim to be unambiguous and, therefore, refused to construe its terms in light of Squires' specification, its prosecution history, or the references cited therein. While recognizing Corbett's primary concern with the formation of thin "film," the board held that Corbett's disclosed use of a "sheet extruding die" and Corbett's reference to the lamination of a number of films into a "single sheet" constituted a disclosure of "sheeting," thereby supporting the claim preamble. It was also noted that the definition of "sheeting" in the Squires patent overlapped the definition

---

sion process and was cited against Squires in ex parte prosecution. Squires contends that the rejection was overcome by the argument that "joining in a tube" (step (a)) requires joining *outside* the die.

5. 37 CFR 1.231(d) reads:

§ 1.231 *Motions before the primary examiner.*

\* \* \* \* \* \*

(d) All proper motions as specified in paragraph (a) of this section, or of a similar character, will be transmitted to and considered by the primary examiner without oral argument, except that consideration of a motion to dissolve will be deferred to final hearing before a Board of Patent Interferences where the motion urges unpatentability of a count to one or more parties which would be reviewable at final hearing under § 1.258(a) and such unpatentability is urged against a patentee or has been ruled upon by the Board of Appeals or by a court in ex parte proceedings. Also consideration of a motion to add

or remove the names of one or more inventors may be deferred to final hearing if such motion is filed after the times for taking testimony have been set. Requests for reconsideration will not be entertained.

6. That statute reads:

§ 120. *Benefit of earlier filing date in the United States*

An application for patent for an invention disclosed in the manner provided by the first paragraph of section 112 of this title in an application previously filed in the United States by the same inventor shall have the same effect, as to such invention, as though filed on the date of the prior application, if filed before the patenting or abandonment of or termination of proceedings on the first application or on an application similarly entitled to the benefit of the filing date of the first application and if it contains or is amended to contain a specific reference to the earlier filed application.

of "film" in the Corbett application and that Squires was, therefore, "estopped from urging a narrower meaning of the term."

Corbett was found to disclose "joining in a tube," as required by clause (a) of the count, in that the area below diverter element 64 formed by diverter plate 62 and die neck 51, although not of circular cross section, functions and may be described as a "tube." The copied claim, broadly construed, was not regarded as precluding the "tube" from being part of the die. Finally, the board held the disclosure of joining *three* streams to be a species within the genus of joining at least two streams and, therefore, found the copied claim to be supported by the Corbett disclosure in the manner sanctioned by *Den Beste v. Martin*, 252 F.2d 302, 45 C.C.P.A. 798, 116 U.S.P.Q. 584 (1958). In summary, the board analyzed the count element by element and found each limitation to be supported by Corbett's disclosure. Squires' motion to dissolve was, therefore, denied, and the board awarded priority to Corbett on the merits of the priority proofs, as to which there is no dispute.

*The Arguments*

Squires assigns as error only the board's disposition of the ancillary "right to make" issue and continues to urge the substance of his motion to dissolve. In addition, Squires contends that for a party to have a "right to make" a claim for purposes of interference, that party's disclosure must provide the support required by 35 U.S.C. § 112, first paragraph, for the *full scope of the copied claim*. Reliance is had, in this regard, on the following statement in the majority opinion in *Hunt v. Treppschuh*, 523 F.2d 1386, 1389, 187 U.S.P.Q. 426, 429 (Cust. & Pat. App. 1975):

> Another distinction is that Hunt's parent application is relied upon as a prior constructive reduction to practice; whereas in *Smith v. Horne*, 450 F.2d 1401, 59 C.C.P.A. 712 (1971) the disclosure was relied upon for a right to make the count.

In the latter situation the requirements of the first paragraph of 35 U.S.C. § 112 must be satisfied for the *full scope* of the count. In the former, however, the § 112, first paragraph requirements need only be met for an *embodiment* within the count. [Emphasis in the original.]

The validity of the *Den Beste* reasoning, relied on by the board, is, thus, directly attacked as being founded on concepts which, appellant argues, should properly be restricted to constructive reduction to practice issues. Squires attempts to sharpen this distinction by pointing to an apparent conflict between the *Den Beste* right-to-make standard and the full enablement requirement of 35 U.S.C. § 120 applicable when a party relies on a parent application filing date.

Corbett, for the most part, embraces the board's opinion. It is alleged that Squires' patent claim 1 is simply broad and reads unambiguously on Corbett's disclosure. The board's reliance on *Den Beste* is said to rest on sound public policy and well-settled law, while any statements in *Hunt* to the contrary are alleged to be dicta. Any conflict between *Den Beste* and 35 U.S.C. § 120 is dismissed as either semantic or as understandable on policy grounds favoring removal of invalid patent claims. Notwithstanding Corbett's professed reliance on *Den Beste*, there are vague allegations that the copied claim is fully supported by the Corbett disclosure even under the *Hunt* standard.

OPINION

◼ While we are in general agreement with the board's disposition of the issues before it, we disagree with the analysis employed in sustaining Corbett's right to make a claim containing the limitation "joining * * * at least *two* laminar-flow streams" (emphasis ours). Notwithstanding Squires' arguments to the contrary, this appears to be the only "generic" limitation in the claim, for it alone comprehends a community of mutually exclusive

manipulative steps. The remaining limitations simply broadly describe unitary features of Squires' process and, as the board found, describe equally well the analogous, albeit specifically different, method steps disclosed by Corbett. Accordingly, we summarily affirm the board's conclusions with respect to these nongeneric limitations.

The flaw in the board's reasoning goes uniquely to the issue of support for generic claim limitations and is apparent from the following excerpt from its opinion:

> Another issue raised by Squires under the first paragraph of 35 USC 112 with respect to the limitations recited in paragraph (a) is that the Corbett application does not contain the disclosure of an apparatus enabling the production of a two-layered sheet. While the apparatus disclosed in Corbett's application produces a three-layered sheet, such disclosure is sufficient to satisfy the enabling requirements of the statute for priority purposes. The count defines a process for producing "at least" two sheets, which is generic to a process for producing three sheets, and disclosure of an apparatus enabling the performance of a single species process falling within a generic process count is sufficient to comply with the statutory requirements of 35 USC 112 insofar as priority of invention is concerned. *Den Beste v. Martin* * * *.

The board adopted the mode of analysis articulated in *Den Beste* wherein the court stated:

> * * * the question as to whether the disclosure of an application is broad enough to support a generic claim is one which relates only to the patentability of that count in the application, and is not ancillary to the issue of priority. So far as priority is concerned, it is sufficient if the application discloses a single species, example or embodiment which clearly meets all the requirements of the count.

Appellant argues that the Board of Patent Interferences erred in failing to give effect to "the law requiring literal and exact support of all limitations of an interference count by the party to whom priority is awarded." However, *the disclosure of a single species or example clearly falling within the count constitutes a support of all its limitations,* so far as the issue of priority is concerned. Manifestly, if Martin reduced to practice one example satisfying the count before Den Beste entered the field, Den Beste cannot be the first inventor of a broad claim embracing that example. If Martin failed to recognize that his example formed part of a broader invention, that fact might preclude him from obtaining broad claims, but it could not constitute Den Beste the first inventor of any claim reading on the said example. [252 F.2d at 305, 45 CCPA at 802, 116 USPQ at 586, emphasis ours.]

As noted by Squires, these statements were made following reference in the opinion to a series of cases which held that the disclosure of a single species in an application was sufficient to evidence a constructive reduction to practice of the generic invention. Without impugning the result reached in *Den Beste*, we are persuaded that the *reasoning* there employed, and similarly employed by the board in this case, is unsound.

Our reasons for this conclusion are best understood by first focusing on the nature of the right-to-make inquiry in an interference between a patent and a pending application. In so doing, we find it helpful to distinguish between several terms often used inconsistently in this area. More particularly, we take care to distinguish between the "patent claim," the "application claim," and the "count." Notwithstanding the identity of the three in this case, as a general proposition they need not be the same, and, in either case, each has unique significance in an interference.

As a prerequisite to the declaration of an interference under 35 U.S.C.

§ 135(a)[7] and 37 CFR 1.201(a),[8] the Commissioner must decide that the "application claim," whether or not identical to the "patent claim," is both patentable and drawn to substantially the same invention as the "patent claim." Failure of either condition precludes the possibility of interference contemplated by the statute. The "count," on the other hand, is merely the vehicle for contesting priority which, in the opinion of the Commissioner, effectively circumscribes the interfering subject matter, thereby determining what evidence will be regarded as relevant on the issue of priority. The "count," as distinguished from a party's "claim," need not be patentable to either party in the sense of being fully supported by either party's disclosure. In fact, where the interference is conducted on a "phantom" count, as described in § 1101.02 of the Manual of Patent Examining Procedure (Third Ed.), or on the basis of a modified patent claim in accordance with 37 CFR 1.205(a),[9] at least one party, by definition, will not have full support for all of the limitations of the count.

■ Manifestly, it is at best confusing, and perhaps erroneous, to speak of a party's right to make the "count." The semantically appropriate statement of the inquiry is whether a party has the right to make that *claim* presently pending *in his application* which the Commissioner has determined to be both patentable and drawn to substantially the same invention as the patent claim. See, *e. g., Tolle v. Starkey*, 255 F.2d 935, 45 CCPA 979, 118 USPQ 292 (1958). Analyses couched in terms of one's "right to make the count" tend to suggest that the inquiry is something other than an examination of the relationship between the applicant's enabling disclosure and the limitations of a then pending claim, an examination, we might add, of the sort routinely conducted pursuant to the first paragraph of 35 U.S.C. § 112 during ex parte prosecution. Such misconceptions seem to have contributed to the confusion which others have found in the *Den Beste* decision.[10]

Viewing the right-to-make analysis as an inquiry into the support afforded a pending claim by the application's disclosure, it becomes apparent that the *Den Beste* reasoning was never justifiable on the basis of the constructive reduction to practice cases cited in its support. When it was implied in those cases that a single species would "support" a generic invention "so far as priority is concerned," what was meant was that proof of a prior constructive reduction to practice of a species would be enough *evidence* to prevail on priority even as to a generic invention. The *Den Beste* court

---

7. § 135. *Interferences*

(a) Whenever an application is made for a patent which, in the opinion of the Commissioner, would interfere with any pending application, or with any unexpired patent, he shall give notice thereof to the applicants, or applicant and patentee, as the case may be. The question of priority of invention shall be determined by a board of patent interferences (consisting of three examiners of interferences) whose decision, if adverse to the claim of an applicant, shall constitute the final refusal by the Patent and Trademark Office of the claims involved, and the Commissioner may issue a patent to the applicant who is adjudged the prior inventor. A final judgment adverse to a patentee from which no appeal or other review has been or can be taken or had shall constitute cancellation of the claims involved from the patent, and notice thereof shall be endorsed on copies of the patent thereafter distributed by the Patent and Trademark Office.

8. § 1.201. *Definition, when declared.*

(a) An interference is a proceeding instituted for the purpose of determining the question of priority of invention between two or more parties claiming substantially the same patentable invention and may be instituted as soon as it is determined that common patentable subject matter is claimed in a plurality of applications or in an application and a patent.

9. § 1.205. *Interference with a patent; copying claims from patent.*

(a) Before an interference will be declared with a patent, the applicant must present in his application, copies of all of the claims of the patent which also define his invention and such claims must be patentable in the application. However, an interference may be declared after copying the claims excluding an immaterial limitation or variation if such immaterial limitation or variation is not clearly supported in the application or if the applicant otherwise makes a satisfactory showing in justification thereof.

10. See Pat. L. Persp., § C.1[3] (1974 Dev.).

erred, as did the board in this case in following it, in reading "so far as priority is concerned" as though it meant "for any and all purposes in an interference."

*Den Beste*, however, was as much a product of its time as it was of semantic confusion. The interference there involved was declared on August 20, 1953, and, at that time, and for sometime thereafter (notwithstanding the liberalization of the PTO rules in 1954), the right to *copy* a patent claim was, for all practical purposes, determinative of the right to contest priority. As a result, there was, and has continued to be, considerable sentiment on this court favoring preservation of the inter partes forum for parties who had apparently made substantially the same invention, but who could not make identical claims, by allowing the applicant to copy a claim "for interference purposes." [11] The desired result was conveniently achieved in *Den Beste* by regarding the issue of undue claim breadth as a question of patentability not ancillary to priority. In this regard, it must be remembered that at that time, in fact, until 1970, it was common practice to treat questions of enablement or support separately from questions of claim breadth, even in ex parte situations.

■ Today, however, it is widely recognized that questions of claim breadth are in fact questions of enablement arising under the first paragraph of 35 U.S.C. § 112, *In re Borkowski*, 422 F.2d 904, 57 CCPA 946, 164 USPQ 642 (1970), and the continued bifurcation of the two in interference practice is manifestly unsound. Further, it is apparent from the cases that are now reaching this court, and from the published decisions of the board, that the PTO is now liberally employing the procedures referred to above which enable an applicant to contest priority inter partes despite his inability to copy a claim. See, *e. g., Aelony v. Arni*, 547 F.2d 566, 192 USPQ 486 (Cust. & Pat. App. 1977); *Nitz v. Ehrenreich*, 537 F.2d 539, 190

USPQ 413 (Cust. & Pat. App. 1976); *Moore v. McGrew*, 170 USPQ 149 (Bd. Pat. Intf. 1971).

■ Corbett, nonetheless, argues that the *Den Beste* reasoning is grounded in sound public policy and that the application thereof to this case to permit both parties the proofs of their earliest embodiments disables neither. We do not agree. Assuming, arguendo, that Corbett has been allowed to copy exactly Squires' patent claim with a less than adequate supporting disclosure, as is permissible under *Den Beste*, rather than having been required to properly copy the claim in modified form, then Squires has been unfairly precluded from raising the issue of interference in fact by the operation of 37 CFR 1.231(a)(1).[12] See *Rion v. Ault*, 455 F.2d 570, 172 USPQ 588 (Cust. & Pat. App. 1972), *modified*, 482 F.2d 948, 179 USPQ 152 (Cust. & Pat. App. 1973); *Brailsford v. Lavet*, 318 F.2d 942, 50 CCPA 1367, 138 USPQ 28 (1963). The foreclosure of this inquiry by PTO rule when the parties have made identical claims assumes that any interference in fact issues arising out of dissimilarities in the supporting disclosures of the parties will be wholly subsumed by the right-to-make inquiry. See *Blackmore v. Hall*, 1905 C.D. 561, 119 O.G. 2523 (Comm. Pat. 1905). Mechanical application of the *Den Beste* reasoning, however, frustrates the only remaining inquiry into the materiality of any limitation not fully supported by the copier's disclosure, thus foreclosing the only inter partes procedure capable of verifying the existence of interfering subject matter. As we noted in *Nitz v. Ehrenreich, supra*:

> The existence of common subject matter defined by the interference count is a prerequisite for an award of priority, i. e., the existence or nonexistence of interfering subject matter goes to the very foundation on which an interference rests. [537 F.2d at 543, 190 USPQ at 416.]

11. See *Loukomsky v. Gerlich*, 264 F.2d 907, 46 CCPA 805, 121 USPQ 213 (1959). See also *In re Hutton*, 356 F.2d 111, 115, 53 CCPA 923, 928, 148 USPQ 545, 548 (1966) (Rich, J., concurring).

12. See note 1, *supra*.

Since we cannot condone the continued frustration of the patentee's right to raise such an issue once it has been established that the patent claim was improperly copied, we are constrained to now reject the *Den Beste* reasoning.

■ We conclude that for an applicant to have a right to copy a patent claim he must have support for the full scope of the claim. See *Hunt v. Treppschuh, supra* at 1389, 187 USPQ at 429. This conclusion rests on the recognition that the right to make a claim in a pending application, even for purposes of interference, depends, as it does with all pending claims, on compliance with the requirements of 35 U.S.C. § 112, first paragraph. There is no other standard. To the extent that *Den Beste* and its progeny are inconsistent with our conclusion, the reasoning of those cases should no longer be followed.[13]

■ Our review of the board's *decision* cannot end simply with a rejection of its *reasoning. Hunt v. Treppschuh, supra.* We must proceed to a determination of whether or not Corbett's disclosure supports the generic claim limitation, "joining * * at least two laminar-flow streams," in the manner required by the first paragraph of § 112. We conclude that it does.

Although there is clearly no specific exemplary support for sheet-forming processes which join only two streams, such is not required by § 112. *In re Gay*, 309 F.2d 769, 50 CCPA 725, 135 USPQ 311 (1962). Rather, in a determination of the scope of his enabling disclosure, Corbett is entitled to have his specification considered as a whole, including the above-quoted generic statement of his invention. *In re Anderson*, 471 F.2d 1237, 176 USPQ 331 (Cust. & Pat. App. 1973). The generic statement of the invention is not restricted to the tubular extrusion embodiment and, therefore, manifests an intention that the invention not be limited, as far as sheets are concerned, to the exemplified three-stream process.

■ Corbett recognizes that the joinder of at least two streams under laminar flow conditions allows subsequent deformation and extrusion thereof without disruption of the layer structure in the final product. While the use of diverter element [64] in the manner exemplified would produce a three-layer sheet structure, it is apparent that simple obstruction of the diverter orifice 65, or some equivalent interruption of the resin feed thereto, would result in the reunion of the two portions of the split stream under the conditions recited in the copied claim. We believe Corbett's contemplation of multi-layer products formed from the same resin supports the conclusion that such variations of the sheet-forming process are comprehended by the Corbett disclosure. See *In re Farrow*, 554 F.2d 468, 193 USPQ 689 (Cust. & Pat. App. 1977).

In the alternative, Corbett clearly contemplates the joinder of additional layers through orifices on the "tube" (passageway 51) wall. Such an added stream is joined with the main stream in the manner contemplated by the copied claim and through a mechanism that is totally independent of the operation of diverter element [64]. In our opinion, such a disclosure, when read in light of the generic statement of the invention, fairly comprehends sheet-forming processes wherein the diverter is removed entirely with one or more additional layers being introduced through orifices on the tube wall. Our conclusion is reinforced by Corbett's reference to the ease of modifying standard lines "by the simple addition of a suitable plate 62."

---

13. A number of our decisions have purported to employ the *Den Beste* analysis. *E. g., Loukomsky v. Gerlich, supra.* Still other cases, while not relying on *Den Beste*, sanctioned similar analyses. *E. g., Hall v. Taylor*, 332 F.2d 844, 51 CCPA 1420, 141 USPQ 821 (1964). See also, *In re Waymouth*, 486 F.2d 1058, 179 USPQ 627 (Cust. & Pat. App. 1973), *modified*, 489 F.2d 1297, 180 USPQ 453 (Cust. & Pat. App. 1974). It is believed that our decision today does not affect the ultimate conclusions reached in any of those cases, but to here attempt to prove our belief would be a fruitless exercise. Suffice it to say that our opinion should be read as the adoption of a more satisfactory methodology which encourages the use of PTO procedures under which controversies of this type are more likely to be dealt with as interference in fact inquiries, as befits their true nature.

In summary, we agree with the decision of the board that both Squires' motion to dissolve and the perceived motion to deny Corbett the benefit of his parent filing date, turning, as they do, on the same issue, should be denied. The issue upon which both motions turn, however, is § 112, first paragraph, support in the Corbett disclosure for the full scope of the copied claim. We are persuaded that the requisite support exists.

The decision of the board is *affirmed.*

*AFFIRMED.*