**GENERAL INSTRUMENT CORPORATION, INC.,**
Plaintiff–Appellant

v.

**SCIENTIFIC–ATLANTA, INC.,**
Defendant–Appellee.

No. 92–1491.

United States Court of Appeals,
Federal Circuit.

June 9, 1993.

---

**14.** The United States Court of Appeals for the Federal Circuit adopted as precedent all decisions of the Court of Claims entered before 30 September 1982 in *South Corp. v. United States,* 690 F.2d 1368, 1379 (Fed.Cir.1982).

Francis J. Murphy, Hopgood, Calimafde, Kalil, Blaustein & Judlowe, New York City, argued for plaintiff-appellant. With him on the brief were Stephen B. Judlowe, Glen M. Diehl and John E. Curtin. Also on the brief was Albert G. Bixler, Hangley, Connolly, Epstein, Chicco & Ewing, Philadelphia, PA, of counsel.

Joseph M. Skerpon, Banner, Birch, McKie & Beckett, Washington, DC, argued for defendant-appellee. With him on the brief were Joseph M. Potenza and Thomas L. Peterson.

Before NIES, Chief Judge, CLEVENGER and RADER, Circuit Judges.

CLEVENGER, Circuit Judge.

This case arises from an interference proceeding in the Patent and Trademark Office (PTO) to determine whether General Instrument Corporation, Inc. or Scientific–Atlanta, Inc. has the right to priority on an invention relating to methods of encrypting and decrypting video signals. The Board of Patent Appeals and Interferences (Board) determined that Scientific–Atlanta was entitled to priority. General Instrument appealed that decision to the United States District Court for the Eastern District of Pennsylvania pursuant to 35 U.S.C. § 146 (1988). Before trial, General Instrument restricted its appeal of the Board's priority decision to the single ground that Scientific–Atlanta's invention was unpatentable under 35 U.S.C. § 102(b) (1988) due to an allegedly invalidating public use more than one year before the filing date of Scientific–Atlanta's patent application. Scientific–Atlanta moved in limine to preclude all testimony regarding the alleged invalidating public use, arguing that

the issue had not been "raised" before the Board and thus could not be raised in the section 146 district court proceeding. Rejecting General Instrument's contentions that testimony should be taken, the district court granted Scientific–Atlanta's motion in limine and entered judgment in favor of Scientific–Atlanta. *General Instrument Corp. v. Scientific–Atlanta, Inc.,* No. 91–6923 24 USPQ.2d 1395, 1992 WL 176423 (July 16, 1992) (memorandum opinion and order). General Instrument appeals that judgment. We affirm.

### I

Section 146 of Title 35 provides that "[a]ny party to an interference dissatisfied with the decision of the Board ... may have remedy by civil action." Consequently, such a party may timely file a complaint in an amenable federal district court challenging the decision of the Board awarding priority to another. The statute provides for review of the "decision" of the Board, which presumably encompasses both the decision itself and all issues raised by the Board's decision. This court, however, has held that the district court is also authorized to accept proffered testimony on issues raised by the parties during the interference proceedings in addition to issues raised by the Board's decision. *Case v. CPC Int'l, Inc.,* 730 F.2d 745, 752, 221 USPQ 196, 202 (Fed.Cir.1984).

*Case* left open three questions, however. The court explicitly stated that "[w]hether under some circumstances a district court may properly restrict the admission of testimony on an issue raised before the board is not before us." *Id.,* 730 F.2d at 752, 221 USPQ at 202. Similarly, the court in *Case* did not determine how one demonstrates that an issue has been raised before the Board in a manner sufficient to qualify it for testimonial admission in a section 146 proceeding. Finally, *Case* left undecided the question of whether a district court may admit testimony in a section 146 proceeding on an issue con-

cededly not raised in any fashion before the Board.

In this appeal, we must decide whether the public use issue was raised before the Board for purposes of a subsequent appeal pursuant to section 146. If so, we must decide whether the district court nonetheless may exclude testimony on that issue. If not so raised, we must decide whether the district court nonetheless may admit such testimony, and if so, whether the district court properly excluded the testimony proffered in this case by General Instrument.

### II

To determine whether the issue of an invalidating public use was "raised" during the interference proceedings, it will be useful to endure a brief excursion into the mechanics of interference proceedings. A common two-party interference before the PTO is an administrative proceeding expected to be concluded in 24 months. 37 C.F.R. § 1.610(c) (1992). Once the PTO sends a notice of declaration of interference to each party, 37 C.F.R. § 1.611(a) (1992), it also sets a period for filing preliminary statements and preliminary motions, a period that usually is three months. 37 C.F.R. § 1.611(d) (1992); 49 Fed.Reg. 48,416, 48,449 (Dec. 12, 1984).

A preliminary statement is a formal document that serves several purposes. Initially, it permits the issuance of show cause orders by an examiner-in-chief or the Board when it would be futile to take testimony. *See* 37 C.F.R. § 1.640(d)(3) (1992). It also limits a party's proof on date of invention, 37 C.F.R. § 1.629(c) (1992),* and provides notice of the opposing party's case at the close of the motions period in most situations. 49 Fed. Reg. at 48,439. A preliminary statement may be filed at any time during the period for filing motions. 37 C.F.R. § 1.621(a) (1992). It is filed in a sealed envelope and is usually unavailable to the opposing party until the examiner-in-chief in charge of the

---

* For example, a preliminary statement for an invention made abroad must contain information concerning the dates on which certain aspects of the invention were first introduced into the United States: (1) a drawing, (2) a written description, (3) the first disclosure to another person, (4)

the first introduction of the inventor's conception, (5) an actual reduction to practice, if any, and (6) if pertinent, active exercise of reasonable diligence toward reduction to practice after introduction of the inventor's conception. 37 C.F.R. § 1.624 (1992).

interference rules on the preliminary motions and directs that it be opened. 37 C.F.R. §§ 1.627(a), 1.631 (1992).

The "preliminary" motions are usually a critical part of an interference. Although the Board may consider any issue in order to prevent manifest injustice, 37 C.F.R. § 1.655(c) (1992), a party may not raise any issue at the final hearing that "properly could have been raised" by a preliminary motion pursuant to section 1.633, a motion to correct inventorship pursuant to section 1.634, or in an opposition to these motions if the motions were successful, unless the party shows good cause for the failure to raise the issue in time. 37 C.F.R. § 1.655(b) (1992). Thus,

> the preliminary motions which a party files or does not file under § 1.633 can have far reaching consequences for both the outcome of the interference and subsequent ex parte prosecution. Consequently, it is imperative during the three-month period between declaration of the interference and the filing of preliminary motions to analyze long-range strategy with respect to ... priority and patentability issues in the interference.

Bruce M. Collins, *Current Patent Interference Practice* (P–H) § 1.3, at 5 (1989). The Board may consider any properly raised issue which, in addition to issues raised in preliminary motions, may include issues of unpatentability presented by the examiner-in-chief.

> [I]f the examiner-in-chief becomes aware of a reason why a claim corresponding to a count may not be patentable the examiner-in-chief may notify the parties of the reason and set a time within which each party may present its views. After considering any timely filed views, the examiner-in-chief shall decide how the interference shall proceed.

37 C.F.R. § 1.641 (1992). The parties aid in identifying such issues pursuant to their duty to disclose information material to patentability. 37 C.F.R. § 1.56(a) (1992). Such information is submitted to the examiner-in-chief in information disclosure statements.

If the examiner-in-chief's rulings on the preliminary motions do not terminate the interference, the preliminary statements are served on the opposing party and opened. 37 C.F.R. §§ 1.631, 1.646 (1992). The examiner-in-chief sets the time for discovery and taking testimony as well as a date for a final hearing before a three-member board. 37 C.F.R. § 1.654 (1992). After the final hearing, the Board issues a final decision. 37 C.F.R. § 1.658(a) (1992). A party dissatisfied with the Board's decision may request reconsideration of that decision, 37 C.F.R. § 1.658(b) (1992), or it may seek judicial review by proceeding directly to the United States Court of Appeals for the Federal Circuit for review based on the record before the Board. 35 U.S.C. §§ 141–144 (1988). Alternatively, a party may proceed to a district court for a hybrid appeal/trial *de novo* proceeding in which the PTO record is admitted on motion of either party, but it may be supplemented by further testimony. 35 U.S.C. § 146.

### III

We now turn to the facts of this case. The PTO declared an interference between senior party John Lowry, inventor of the subject matter of patent application No. 507,565 (the Lowry application) assigned to Scientific–Atlanta, and junior party Nuno Romao, inventor of U.S. Patent No. 4,594,609 (the Romao patent) assigned to General Instrument in October 1986.

The examiner-in-chief assigned to this interference proceeding set March 18, 1987 as the final deadline for filing preliminary statements and preliminary motions. Scientific–Atlanta filed a preliminary statement on March 18, 1987 in which Scientific–Atlanta indicated that "[a]n actual reduction to practice of [Scientific–Atlanta's] invention was first introduced into the United States by May 3, 1982." Upon reading Scientific–Atlanta's preliminary statement, someone familiar with Scientific–Atlanta's patent application would note that Scientific–Atlanta's reduction to practice date corresponded to the date the inventor demonstrated his product at the 1982 National Cable Television Association meeting and that this public demonstration had taken place more than one year before the June 24, 1983 patent

application date. If the product publicly demonstrated had been Scientific–Atlanta's claimed invention, its showing would render the claims covering the invention invalid because an inventor is not entitled to a patent if the invention was in public use more than one year prior to the date of the U.S. patent application. 35 U.S.C. § 102(b). Scientific–Atlanta's preliminary statement, however, remained closed to General Instrument until June 1, 1988, the same date General Instrument received Scientific–Atlanta's first information disclosure statement pursuant to 37 C.F.R. § 1.56(a). In that statement, Scientific–Atlanta stated that

> [s]ince the filing of the Preliminary Statement, the Party [Scientific–Atlanta] and its attorney have come to understand that the circumstances of the 1982 reduction to practice may also be material with regard to issues under 35 U.S.C. § 102(b). Now that the circumstances and dates raised in [Scientific–Atlanta's] Preliminary Statement have been served on [General Instrument], it is appropriate also for the Examiner to consider these circumstances in connection with § 102(b).

Upon receipt of Scientific–Atlanta's preliminary statement and first information disclosure statement in June 1988, General Instrument could not have made a preliminary motion for judgment on the public use issue because the March 1987 deadline for such motions was long past. General Instrument, however, could have filed a belated preliminary motion for judgment on that ground, but it did not do so. Such a motion likely would have met the good cause requirement the PTO imposes on belated motions because the information underlying the motion, Scientific–Atlanta's preliminary statement and disclosure statement, had not been available earlier in the proceeding. *See* 37 C.F.R. §§ 1.640(b), 1.645(b), 1.655(b) (1992). A year later, in June 1989, Scientific–Atlanta filed a second information disclosure statement accompanied by several affidavits supporting its contention that the invention claimed in Scientific–Atlanta's application had not actually been reduced to practice at the public trade show; rather the inventor merely had demonstrated a simulated device. At that time, General Instrument affirmatively chose not to cross-examine the affiants supporting Scientific–Atlanta's information disclosure statement on the question of patentability. The examiner-in-chief construed General Instrument's submission to eschew further pursuit of any patentability issue. Without addressing Scientific–Atlanta's possible prior public use, the Board determined that the Scientific–Atlanta application had priority over the General Instrument patent and, thus, that General Instrument was not entitled to its patent. General Instrument sought review of the Board's decision by civil action in federal district court pursuant to 35 U.S.C. § 146.

During the course of the district court proceeding General Instrument withdrew all issues except that of Scientific–Atlanta's prior public use. Scientific–Atlanta moved to preclude the introduction of evidence on this issue on the grounds that the issue had not been raised for consideration by the Board during the interference proceeding and, thus, could not be raised in the district court.

The district court agreed and granted Scientific–Atlanta's motion. The district court found that the Board did not address the issue in its findings or conclusions and that the issue had not been raised to the Board through a preliminary motion or *sua sponte* by the examiner-in-chief. The district court further determined that Scientific–Atlanta had perpetrated no fraud during the interference proceeding which might permit the court to reach the issue even if it had not been raised before the Board. Further, the district court found that General Instrument itself had been negligent because it had failed to put the issue of public use before the Board through a belated preliminary motion. Because General Instrument waived all challenges to the Board's decision other than patentability, the district court entered judgment in favor of Scientific–Atlanta.

IV

 In the circumstances of this case, we think it clear that Scientific–Atlanta's preliminary and information disclosure statements placed the subject matter of the allegedly invalidating public use before the exam-

iner-in-chief during the interference proceeding. Neither party, however, framed the subject matter in the manner specified by the PTO's interference regulations. Specifically, General Instrument did not avail itself of the opportunity to require determination of the issue by the examiner-in-chief and the Board via a belated motion. In order for an issue to be raised adequately in an interference proceeding so that it qualifies for evidentiary review in a section 146 proceeding, more is required than passing reference to the subject during the course of the interference proceeding. For the most part, parties should raise issues in the manner clearly specified in the PTO's interference regulations, that is through preliminary motions, motions to correct inventorship, belated motions delayed for good cause or opposition to these motions.

Short of such compliance with the regulations, issues may only be deemed raised for section 146 purposes if the record clearly demonstrates that the issue was undeniably placed before the examiner-in-chief, and one or more parties insisted that the issue be resolved in the process of deciding which of the parties was entitled to priority. In this case, the record clearly demonstrates that neither party wished the issue to be resolved in the interference proceeding. In fact, at the point in time when the public use issue should have been formally raised in the proceeding, General Instrument expressed disinterest in pursuing the matter. In so doing, General Instrument waived any interest it had in receiving the Board's decision on the issue.

Further, the examiner-in-chief did not exercise his discretionary authority under 37 C.F.R. § 1.641 to include the issue in the decisional process of the interference. Consequently, the district court correctly decided that the issue of Scientific–Atlanta's allegedly invalidating public use was not raised before the Board for purposes of a section 146 proceeding. Having reached this conclusion, we again have no occasion to decide whether "a district court may properly restrict the admission of testimony on an issue raised before the board." *Case*, 730 F.2d at 752, 221 USPQ at 202.

## V

We now turn to the question of whether the district court erred in refusing to admit evidence on the public use even though the issue was not raised before the Board. Initially, we need pause only briefly to consider whether the district court has the authority to admit such evidence in a section 146 proceeding. District court review of an interference proceeding under section 146 is an equitable remedy of long standing. *Standard Oil Co. v. Montedison S.p.A*, 540 F.2d 611, 616–17, 191 USPQ 657, 660–61 (3d Cir. 1976). As such, the district court may, in appropriate circumstances, exercise its discretion and admit testimony on issues even though they were not raised before the Board. *See id.* (fraud relating to the interference proceeding itself may be one such issue). Upon careful review of the history of the Scientific–Atlanta (Lowry)/General Instrument (Romao) interference proceeding, the district court concluded that General Instrument's abject failure properly to raise the issue in the interference proceeding warranted the court's discretionary decision to deny admission of testimony on the issue at trial. By no means can we find that the district court abused its discretion on this matter. Because General Instrument's only issue on appeal was that of Scientific–Atlanta's alleged public use, the district court properly entered judgment in favor of Scientific–Atlanta.

Lest the parties or the public be concerned that Scientific–Atlanta may now return to the PTO and immediately be granted a patent of questionable validity based on the Lowry application, counsel for Scientific–Atlanta has assured this court that it will ensure that the PTO fully considers the allegation of public use before any patent issues. For these reasons, we affirm the judgment of the district court.

No costs.

*AFFIRMED.*