CONSERVOLITE, INC.,
Plaintiff–Appellee,

v.

Don F. WIDMAYER, Defendant–
Appellant.

No. 93–1280.

United States Court of Appeals,
Federal Circuit.

April 21, 1994.

Rehearing Denied; Suggestion for
Rehearing In Banc Declined
June 21, 1994.

William K. Wells, Jr., Kenyon & Kenyon, Washington, DC, argued, for plaintiff-appellee.

Ross F. Hunt, Jr., Larson & Larson, Arlington, VA, argued, for defendant-appellant.

Before ARCHER *, Chief Judge, NEWMAN and LOURIE, Circuit Judges.

LOURIE, Circuit Judge.

Don F. Widmayer appeals from a decision of the United States District Court for the District of Maryland reversing the decision of the United States Patent and Trademark Office (PTO) Board of Patent Appeals and Interferences and awarding priority of invention in Interference No. 101,516 to Conservolite, Inc. *Conservolite, Inc. v. Widmayer*, No. K–90–2524 (D. Md. Feb. 24, 1993). Because the district court's decision was based on an issue not raised with or decided by the Board in the interference, and because the court's underlying factual findings supporting the award of priority are not challenged here, we reverse.

## BACKGROUND

This case involves an interference between U.S. patent application serial number 571,-830, filed by Widmayer, and U.S. Patent 4,507,569 to Hess, assigned to Conservolite.[1]

---

* Chief Judge Glenn L. Archer assumed the position of Chief Judge on March 18, 1994.

1. The application for the '569 patent was filed on December 30, 1983, and the patent issued on March 26, 1985. The '830 application was filed on January 19, 1984, and was eventually allowed. Although the application was withdrawn from issue by Widmayer for the purpose of provoking the interference, it was printed as U.S. Patent 4,546,308 on October 8, 1985. Widmayer

Both specifications are directed to control systems for regulating a power supply. The interference was declared on April 4, 1986, with one count; claim 1 of the '569 patent and claim 8 of the '830 application were designated to correspond exactly to the count. The Board awarded priority of invention to Widmayer, finding that Widmayer reduced the invention to practice prior to Hess; that Widmayer had not abandoned, suppressed, or concealed the invention; and that Hess derived the invention from Widmayer. Conservolite sought remedy in the district court pursuant to 35 U.S.C. § 146 (1988).

At trial, the court found that "Widmayer did reduce to practice the invention named in the account [*sic*] of the interference proceeding," that "Widmayer's reduction to practice came first," and that "Widmayer did not abandon, conceal, or suppress[ ] his invention." The court further opined that if the inventions of Widmayer and Hess had been "sufficiently similar," Hess would have derived the invention from Widmayer. However, relying upon testimony given during trial by an expert witness, the court found that the invention reduced to practice by Widmayer was not "sufficiently similar to the invention described in the count." Based on this finding, the court awarded priority of invention to Conservolite. Widmayer appealed to this court.

### DISCUSSION

■ What has occurred in this case is an award of priority to the party who was found to be second to invent because the parties were found not to be claiming the same invention. Such a case is ripe for reversal. *See Squires v. Corbett,* 560 F.2d 424, 433, 194 USPQ 513, 519 (CCPA 1977) (if the inventions at issue are either unpatentable to the parties or are not the same invention, no contest of priority as contemplated by 35 U.S.C. § 135 exists).

■ Our jurisdiction to entertain this appeal is based on 28 U.S.C. § 1295(a)(4)(C) (1988). Priority is a question of law which is to be determined based upon underlying factual determinations. *Price v. Symsek,* 988 F.2d 1187, 1190, 26 USPQ2d 1031, 1033 (Fed. Cir.1993). As with any bench trial, we review the district court's judgment for clearly erroneous findings of fact and errors of law. *See Fregeau v. Mossinghoff,* 776 F.2d 1034, 1038, 227 USPQ 848, 851 (Fed.Cir.1985); Fed.R.Civ.P. 52.

■ The arguments presented in the district court and on appeal have focused almost exclusively on whether Widmayer's invention "met the count" or was "sufficiently similar" to the invention of the interference count. Specifically, Widmayer, who acted *pro se* in the interference and in the district court, now claims that the court's judgment rests on the clearly erroneous finding that "the Widmayer circuit does not make the count," while Conservolite argues that Widmayer did not prove a reduction to practice of the invention of the count because Widmayer's invention is structurally different from the invention disclosed in the Hess patent. Much effort was spent by both parties concerning interpretation of the opinion of an expert witness and whether he changed his opinion at trial. However, the fate of this appeal does not turn on the merits. The issues presented by the parties were not raised during the interference; therefore, they were not properly before the district court. The legal error in the judgment below resulted from the fact that the district court rested its decision on a ground not properly before it. Thus, we must reverse the court's judgment of priority.

Interference practice is highly arcane and specialized, and complicating the situation is the fact that the PTO changed its rules fairly recently.[2] One result of this change is that the issues raised in this appeal cannot be appropriately analyzed in terms of a party's

---

amended his application to add claims 8–12, which were the same as claims 1–5 of the '569 patent. The interference also involved an application for reissue of the '569 patent.

**2.** The PTO's former rules governing interference proceedings, 37 C.F.R. § 1.201 to 1.288, were

replaced with a new set of rules, 37 C.F.R. § 1.601 to 1.688, effective February 11, 1985. Unless otherwise indicated, all future references to 37 C.F.R. in this opinion refer to the 1993 version.

"right to make" a count. Under the PTO's old interference rules, "a party copying claims for the purpose of provoking an interference bore the burden of proving by clear and convincing evidence that it had the 'right to make' the *claim.*" *Kubota v. Shibuya*, 999 F.2d 517, 521, 27 USPQ2d 1418, 1422 (Fed. Cir.1993) (emphasis added). This "right to make the claim" turned on whether an applicant's disclosure supported the full scope of the claim under 35 U.S.C. § 112, ¶ 1. *Squires*, 560 F.2d at 435, 194 USPQ at 520. However, this "right to make" analysis is largely inapposite in the context of the PTO's new interference rules. *See Kubota*, 999 F.2d at 522, 27 USPQ2d at 1422–23.

▪ The current rules do not require "copying" claims. 37 C.F.R. §§ 1.603–.607. As a prerequisite to the declaration of an interference between an application and an issued patent, the PTO must determine that the subject matter of the application claim, whether or not the language of the claim is identical to that of the patent claim, is patentable, and whether the claims are drawn to the same invention.[3] *See* 37 C.F.R. §§ 1.601, 1.606. The declaration of an interference thus *prima facie* establishes those prerequisite conditions. While the burden of establishing *prima facie* priority rests initially on a party seeking to provoke an interference, *see* 37 C.F.R. § 1.608, once an interference has been declared, the burden is on a party who seeks to change the nature of the interference to take action by means of a suitable motion to persuade the examiner-in-chief or the Board of the merits of his or her position. *Kubota*, 999 F.2d at 522, 27 USPQ2d at 1422.

---

**3.** The PTO's interference rules define the "same patentable invention" by way of the following example: invention A is the "same patentable invention" as invention "B" when invention "A" is the same as (35 U.S.C. § 102) or is obvious (35 U.S.C. § 103) in view of invention "B" assuming invention "B" is prior art with respect to invention "A." 37 C.F.R. § 1.601(n).

**4.** The *pro se* status of the appellant motivates us to consider the decisive question whether the "sufficiently similar" or "same patentable invention" issue was properly raised in the district court, even though its consideration there was not clearly challenged by appellant.

**5.** Section 146 provides:

The PTO rules specifically permit parties in an interference to file motions contesting, for example, the patentability of an opponent's claim, *see* 37 C.F.R. § 1.633(a), the existence of an interference in fact, *see id.* § 1.633(b), and the designation of particular claims as corresponding to a count in order to redefine the interfering subject matter, *see id.* § 1.633(c). Section 1.655 of the PTO's interference rules provides that a party shall not be entitled to raise for consideration at final hearing a matter which properly could have been raised by a motion or opposition, unless the party shows good cause why the issue was not timely raised and except to prevent manifest injustice. 37 C.F.R. § 1.655(b); *see General Instrument Corp. v. Scientific–Atlanta, Inc.*, 995 F.2d 209, 212, 27 USPQ2d 1145, 1147 (Fed.Cir.1993) ("[T]he preliminary motions which a party files or does not file under § 1.633 can have far reaching consequences for both the outcome of the interference and subsequent ex parte prosecution."); *accord Kwon v. Perkins*, 6 USPQ2d 1747, 1751 (Bd.Pat.App. & Interfer.1988) (party who did not raise an issue by motion under § 1.633 was not entitled to do so at Board), *aff'd*, 886 F.2d 325, 12 USPQ2d 1308 (Fed.Cir.1989). The fact that Conservolite did not contest that the parties were claiming the same patentable invention by way of a suitable motion not only precluded Conservolite from doing so at the Board's final hearing, it also precluded Conservolite from raising this issue in an action brought pursuant to § 146.[4]

▪ Judicial review of the Board's determinations in an interference is provided for by 35 U.S.C. § 146.[5] While § 146 provides

**§ 146 Civil action in case of interference**
Any party to an interference dissatisfied with the decision of the Board of Patent Appeals and Interferences on the interference, may have remedy by civil action, if commenced within such time after such decision, not less than sixty days, as the Commissioner appoints or as provided in section 141 of this title, unless he has appealed to the United States Court of Appeals for the Federal Circuit, and such appeal is pending or has been decided. In such suits the record in the Patent and Trademark Office shall be admitted on motion of either party upon the terms and conditions as to costs, expenses, and the further cross-examination of the witnesses as the court im-

that the administrative record developed at the PTO may be admitted "without prejudice to the right of the parties to take further testimony," the right to offer new evidence is not unlimited. Rather, an action under § 146 is essentially a proceeding to review the action of the Board. While the expression "*de novo*" is often used to describe a § 146 action, the statute does not use this language or state that new issues can freely be raised. Section 146 authorizes the district court on review to accept new testimony, but normally only as to issues raised by the parties during the proceedings below or by the Board's decision. *Case v. CPC Int'l, Inc.,* 730 F.2d 745, 752, 221 USPQ 196, 202 (Fed. Cir.), *cert. denied,* 469 U.S. 872, 105 S.Ct. 223, 83 L.Ed.2d 152, 224 USPQ 736 (1984). Thus, the parties to an interference must make a complete presentation of the issues at the Board level so that the interference is efficient and not wasteful of administrative and judicial resources.

■ In order for an issue to have been raised adequately so that it qualifies for consideration in a § 146 proceeding, the issue should have been raised as specified in the PTO's interference rules, for example, through preliminary motions, motions to correct inventorship, miscellaneous motions, belated motions delayed for good cause, or opposition to these motions. *See General Instrument,* 995 F.2d at 214, 27 USPQ2d at 1148. In this case, Conservolite failed to raise the "same patentable invention" issue in the manner specified by the interference rules.

■ Even though Conservolite did not contest by motion whether Widmayer claimed the same patentable invention as Hess, the issue nevertheless could be deemed to have been raised for § 146 purposes if the record clearly demonstrates that it was placed before the examiner-in-chief and one or more parties insisted that the issue be

poses, without prejudice to the right of the parties to take further testimony. The testimony and exhibits of the record in the Patent and Trademark Office when admitted shall have the same effect as if originally taken and produced in the suit.

resolved in the interference. *Id.* That also did not occur here.

■ Under appropriate circumstances, a district court may exercise its discretion and admit testimony on issues even though they were not raised before the Board. *Id.* at 214, 27 USPQ2d at 1149. In doing so, courts have considered whether there was suppression, bad faith, or gross negligence on the part of the plaintiff in failing to raise an issue before the Board; whether the evidence was then reasonably available; and whether the issue has been or may be more conveniently and expeditiously raised in another judicial proceeding. *See Standard Oil Co. v. Montedison, S.p.A.,* 540 F.2d 611, 617, 191 USPQ 657, 661 (3d Cir.1976). Other courts have applied a test of due diligence in identifying and procuring evidence, whether or not the failure to identify or procure the evidence was attended by bad faith motives or for tactical reasons. *See Velsicol Chem. Corp. v. Monsanto Co.,* 579 F.2d 1038, 1046, 198 USPQ 584, 591 (7th Cir.1978). Examples of appropriate circumstances have been said to include an intervening change in the law, the presence of a new issue, or the admission of other new evidence deserving of a response or further elaboration. *Id.* at 1046 n. 10, 198 USPQ at 591 n. 10.

The district court in this case admitted testimony on the question whether the parties claimed the same patentable invention without justifying its unusual action. Conservolite also did not justify its failure to raise the issue before the Board and, from the record, we do not see how it possibly could have done so. Whether an applicant's claim is the same patentable invention as the patentee's claim is at the very heart of an interference. Conservolite had before it Widmayer's complete application and had the opportunity to present its contentions.[6] A proceeding under § 146 is not a chance for a party to reconstruct its case, based on a new litigation strategy, leapfrogging the administrative process in the PTO. Conservolite

6. A routine decision by an examiner-in-chief preliminary to declaration of an interference is not equivalent to a specific challenge by motion by an opposing party.

was not entitled to present testimony at the district court *ab initio* concerning whether Widmayer and Conservolite were claiming the same patentable invention. Under the circumstances, we conclude that the court's decision and admission of testimony on this issue was an abuse of discretion.

The district court did hold that Widmayer reduced to practice the subject matter of the count prior to Hess, and that Widmayer did not abandon, suppress, or conceal the invention. It provisionally held that Hess derived the invention from Widmayer. These findings are undisputed. Since Conservolite did not contest in the interference whether Widmayer and Hess claim the same patentable invention, it effectively conceded that they do. *See In re Van Geuns*, 988 F.2d 1181, 1185, 26 USPQ2d 1057, 1060 (Fed.Cir.1993). Accordingly, we reverse the court's award of priority to Conservolite and, based on the district court's underlying factual findings concerning priority, award priority to Widmayer.[7]

█ As a final matter, Widmayer now requests that this case be remanded "for further discovery so that the court can consider its June 24, 1992 non-final holding ... with respect to the effect of the statute of limitations on [Widmayer's RICO and state law] counterclaims." On July 31, 1992, after making extensive findings, the district court entered summary judgment against Widmayer on his RICO and state law counterclaims. Although during a pre-trial hearing concerning Conservolite's motion for summary judgment, the judge stated that "this court may well say that in fairness to Mr. Widmayer, his cross-claims and counterclaims ought to be reopened, as a result of what occurs at trial ...," there is nothing in the record to indicate that Mr. Widmayer actually requested a re-opening of the claims or that the judge in fact reopened the claims. Moreover, the order reversing the decision of the Board and entering judgment for Conservolite stated that "[a]ll other issues in this case have been completed." Widmayer has not contested the propriety of the summary

judgment grant and thus has provided us with no basis for remand in order to revisit his finally decided claims.

The dissent-in-part makes some points that need to be answered. First, it continually refers to an action under § 146 as being "*de novo*," implying thereby that there are no limits on the issues that can be raised in such an action. We repeat what we noted earlier, that the statute does not contain "*de novo*" language, only stating that "the right of the parties to take further testimony" is not prejudiced. *See supra* note 5 and accompanying text. Also, we do not hereby hold that no new issues can be raised in an action under § 146, only that the right to raise such issues is limited to compelling circumstances, which have not been shown to exist here.

The statutory change uniting the Board of Appeals and the Board of Patent Interferences and permitting the new board to consider questions of patentability as well as priority did not decree that issues within the jurisdiction of the Board need no longer first be raised there in order to be eligible for consideration in a § 146 action. *See* Patent Law Amendments Act of 1984, Pub.L. No. 98–622, §§ 201–07, 98 Stat. 3383, 3386–89. The desirability of the expert agency considering decisive matters relating to priority and patentability before they are raised in an action under § 146, which is essentially an appeal subject to the right to present new evidence on issues raised, still exists.

## CONCLUSION

The district court's award of priority to Conservolite is reversed, and priority is awarded to Widmayer.

*REVERSED.*

NEWMAN, Circuit Judge, concurring in part, dissenting in part.

I agree with the panel majority that the district court erred in the final step of its analysis. I write separately because I do not share the majority's view that the district court did not have discretion to consider

---

7. The district court declined to reach the merits of Conservolite's "best mode" challenge. Similarly, Conservolite could not have raised this challenge for the first time in a § 146 proceeding.

whether the inventions were the same, and did not have authority to dispose of the case on that basis. The panel majority has imposed a new restriction on the district court, replacing its judicial discretion with a dependency on the details of PTO proceedings that has not heretofore applied in § 146 actions.

The majority holds that the question of identity of the inventions claimed in patent applications in "interference" can not be decided by the district court in a § 146 trial *de novo*, unless certain internal administrative procedures were followed in the PTO. The majority deems it immaterial that neither side raised this objection at the time that the district court was trying the question of identity of invention. Indeed, both sides viewed the question of identity of invention as essential to resolution of the dispute as to priority of invention. Essential it is, and as fully within the purview of a district court in a § 146 proceeding, as it was before the PTO when the interference was declared.

## I

The panel majority refers to the 1985 statutory and rule changes relating to interferences as somehow supporting the unreviewability by the district court of the issue of identity of invention. These changes were designed to remove the then-existing prohibition whereby the Board of Patent Interferences was barred from considering questions of patentability when raised during an interference proceeding, and thereby to remove one of the time-consuming procedural restrictions that plagued priority contests. *See Perkins v. Kwon*, 886 F.2d 325, 327–28, 12 USPQ2d 1308, 1310–11 (Fed.Cir.1989). New regulations were adopted, to guide examiners and practitioners. *Id.* These PTO regulations did not remove the district court's discretion to consider relevant questions of patentability in a § 146 proceeding.

Under the pre–1985 practice, if a question of patentability of the interference count, or interpretation of the scope or meaning of the claim, arose after the interference was "declared", it was usually set aside until after the priority contest was over—often a matter of years—and then taken up *ex parte*, also often a matter of years. The result was delay, inconvenience, inequity, and inefficiency. The removal of this barrier resulted in a simpler, not a more "arcane", practice. Caution is required lest this court create new bureaucratic complexities, and transport these complexities into the district court.

The PTO, by "declaring" the interference between Widmayer and Hess in accordance with 37 C.F.R. § 1.611, held that there was a common invention represented by the interference count. The district court, after a full trial in accordance with 35 U.S.C. § 146, held that there was not a common invention. My colleagues on this panel hold that the district court is not authorized to decide whether there was a common invention, because Conservolite had made no motion in the PTO in accordance with 37 C.F.R. § 1.633, and the Board did not redecide the issue of common invention. I do not agree that the district court was without discretion to decide the case on this basis, for the absence of identity of invention fully disposed of the issue before the court. The issue of identity of invention was litigated in the district court without objection. It is the only issue on this appeal.

Neither side viewed the issue of identity of invention as outside the permissible scope of the district court proceeding. Although the panel majority holds that "the issues presented by the parties were not raised during the interference; therefore, they were not properly before the district court", that procedural objection was not raised before the district court. Indeed, it is not raised by either party on this appeal. Thus I can not join in taxing the district court with "legal error" in "consider[ing] a matter not properly before it". Even the PTO is not so rigorous. *See* 37 C.F.R. § 1.655(c) (1993) ("To prevent manifest injustice, the Board may consider an issue even though it would not otherwise be entitled to consideration [in rendering a final decision]"). Thus I see scant benefit in requiring the district court *sua sponte* to investigate what happened in the PTO motion period when neither party objected before the district court, or before us.

When a trial court considers an issue that both parties agree is properly before it, and that is within the court's jurisdiction—and

when the issue is dispositive of the dispute—surely it is not "legal error" to decide the dispute on that basis. This is not a matter of deference to the PTO with respect to such aspects as the burden of proof, as discussed in *Kubota v. Shibuya,* 999 F.2d 517, 27 USPQ2d 1418 (Fed.Cir.1993). Nor is this like a direct appeal to the Federal Circuit on the PTO record, as in *Kubota v. Shibuya.* A trial before the district court is not limited to the record of the Board proceedings, and should not be rigidly limited to the procedures whereby that record was created.

Every interference proceeding is founded on the threshold determination by the PTO that both parties are claiming the same invention. It is indeed a new ruling to hold that this material and dispositive fact can not be redetermined before the district court in a trial *de novo.* Although the majority holds that Conservolite was "precluded" from raising this issue at the Board's interference hearing, the district court did not find preclusion, the parties did not argue preclusion, the PTO rules provide for discretion—and neither party raised the question of preclusion on this appeal.

Perhaps PTO interference practice remains "highly arcane and specialized", as the panel majority puts it. As seen in this case, however, when remedy by civil action is selected in the district court, the agency's arcana dissolves in favor of the mainstream procedures of the Federal Rules. In a proceeding under 35 U.S.C. § 146 the parties can create a new record; they can present new witnesses, adduce new evidence, run new tests, conduct demonstrations and plant visits, and bring in experts; and in general do what is needed, and the district court allows, in order to ascertain the truth and decide the dispute. *See Standard Oil Co. (Indiana) v. Montedison, S.p.A.,* 664 F.2d 356, 361, 212 USPQ 327, 332 (3d Cir.1981) ("action brought under 35 U.S.C. § 146 is a trial *de novo* "), *cert. denied,* 456 U.S. 915, 102 S.Ct. 1769, 72 L.Ed.2d 174 (1982).

The majority cites *General Instrument Corp. v. Scientific–Atlanta, Inc.,* 995 F.2d 209, 27 USPQ2d 1145 (Fed.Cir.1993), wherein this court sustained the decision of the district court not to consider a public use issue that had not been raised before the Board. This court reaffirmed, however, that "the district court may, in appropriate circumstances, exercise its discretion and admit testimony on issues even though they were not raised before the Board". *Id.* at 214, 27 USPQ at 1149.

The 1985 legislation did not affect the statutory divergence between direct review by the Federal Circuit on the PTO record, 35 U.S.C. § 144, and the remedy by civil action in the district court authorized by 35 U.S.C. § 146. These paths are intended to provide different recourse. *See Standard Oil Co. v. Montedison, S.p.A.,* 540 F.2d 611, 616–17, 191 USPQ 657, 660–61 (3d Cir.1976) (in a § 146 review of the decision of the Board, the court has discretion to depart from the general rule against raising new issues, when relevant to the factual issue of priority of invention). The reforms applied to the PTO in 1985 did not operate to reduce the discretion of the district court in a § 146 action. As stated in *Perkins v. Kwon,* 886 F.2d at 328, 12 USPQ2d at 1311, "Congress intended that if patentability is fairly placed at issue in the proceeding, it will be determined."

Remedy for agency action by trial *de novo* in a court is not unique to the patent system. One need not look beyond other areas of Federal Circuit purview; for example, a federal employee with a discrimination claim before the Merit Systems Protection Board can take the claim to the district court for trial *de novo;* an importer can take an adverse decision of the Customs Service to the Court of International Trade for trial *de novo;* an adverse decision of a government Contracting Officer can be taken to the Court of Federal Claims for trial *de novo.* As we said in connection with a *de novo* proceeding under 35 U.S.C. § 145 relating to review of the Board's denial of a patent, "[u]nless a party is prejudiced thereby or due process is denied, expeditious justice is better served by avoiding artificial restrictions on the district court's authority to resolve all issues reasonably raised in the proceeding." *Newman v. Quigg,* 877 F.2d 1575, 1579, 11 USPQ2d 1340, 1343 (Fed.Cir.1989) (district court had discretion to permit the Commissioner to raise a new ground of rejection).

Since the panel majority recognizes that the district court had discretion to consider new issues or evidence in a § 146 action, it is hard to understand the premise of the majority's ruling. This is not a case in which a party schemed to "leapfrog" the patent office decisionmakers, intending to save its trump card for the district court.[1] It is inappropriate to require the district court to check whether every argument and issue was not only before the Board, but whether it was raised in compliance with "arcane and specialized" rules that were not identified, argued, or briefed.

It has heretofore been recognized that issues that may be dispositive of the issue of priority may be considered in a § 146 review, within the district court's discretion. No abuse of that discretion has here been shown. The finding that the inventions of Widmayer and Hess were not the same disposed of the dispute as to priority. This issue was decided on its merits, and it was within the authority and discretion of the district court to decide it. Our review of the district court's decision should include the merits of this issue.

## II

The district court did make an error of law, after it found that the inventions of Widmayer and Hess were not the same. It was incorrect to award "priority" to the second inventor Hess, for when the inventions are different, the second-to-invent can not possibly have priority over the first-to-invent. To this extent, I join with the majority.

---

1. The majority opinion suggests that the question of identity of invention was a new issue that had not been before the patent office. To the contrary, there was an explicit ruling by the examiner-in-chief that Widmayer had the right to make the count of the interference, following Widmayer's copying into his application of claim 1 of Hess' patent. The claim was identified as copied for interference purposes, was examined in Widmayer's application, and was found patentable to him. This was the basis of the declaration that "interference" existed, and of the Board's subsequent determination of who was the first to invent the common invention. The patentability to Widmayer of the Hess invention was thus decided in the PTO, as a routine and necessary step in the interference procedure. It was not a new issue—in contrast, for example, to the public use issue that was first raised in the district court in *General Instrument*—and it was fundamental to the interference.