**SCIMED LIFE SYSTEMS, INC.,**
**Plaintiff and Counterclaim**
**Defendant,**

v.

**MEDTRONIC AVE INC., Defendant**
**and Counterclaimant,**

**and Eric C. Martin, Defendant and**
**Counterclaim–Defendant**

**No. 01–2015 (RJL).**

United States District Court,
District of Columbia.

Aug. 30, 2003.

The first is the motion for default judgment by defendant and counterclaimant Medtronic AVE, Inc. ("Medtronic") against defendant and counterclaim-defendant Eric C. Martin and plaintiff and counterclaim-defendant Scimed Life Systems, Inc. ("Scimed"). Second is Scimed's motion to dismiss Medtronic's counterclaim for lack of subject matter jurisdiction. Finally, Medtronic has filed a Rule 11 motion for sanctions against Scimed, arguing that Scimed's case is a "sham," and that Scimed's papers contain material misrepresentations of fact.

For the reasons set forth below the Court hereby grants Medtronic's motion for entry of default judgment against Martin, but reserves ruling on the relief to which Medtronic is entitled. The Court denies Medtronic's motion for default judgment as to Scimed and denies Scimed's motion to dismiss Medtronic's counterclaim. Finally, the Court also denies Medtronic's Rule 11 motion for sanctions.

Marcia H. Sundeen, Arnold & Porter, Nanda K. Alapati, Pennie & Edmonds, LLP, Victor Balancia, Morgan, Lewis & Bockius, L.L.P., Washington, DC, for Plaintiff.

Charles Robert Work, Donna M. Tanguay, John R. Fuisz, Mark Gerard Davis, McDermott, Will & Emery, Washington, DC, for Defendant.

## MEMORANDUM OPINION AND ORDER

LEON, District Judge.

Three motions are now pending before the Court in the above captioned case.

## I. BACKGROUND

Plaintiff and counterclaim-defendant Scimed brought the instant action pursuant to 35 U.S.C. § 146 to contest the decision of the Board of Patent Appeals and Interferences (the "Board") of the United States Patent and Trademark Office ("USPTO") regarding certain patent applications for an apparatus for reinforcing a bifurcated lumen. Plaintiff Scimed and defendant and counterclaimant Medtronic each are assignees of record of two, different patent applications for a bifurcated lumen invention;[1] defendant and counterclaim-defendant Eric C. Martin was

1. Andrew Cragg and Michael Dake filed an application with the USPTO regarding the bifurcated lumen apparartus on June 5, 1995.

The application was assigned the serial number 08/461,402 (the " '402 application"). Cragg and Dake assigned all rights in the '402

awarded a patent for the same apparatus. The USPTO declared an interference on April 23, 1998, between Scimed's patent application (the "Cragg" or "'402 application"), Medtronic's patent application (the "Fogarty" or "'836 application") and Martin's patent (the "Martin" or "'817 patent"). This interference proceeding was assigned Interference No. 104,192, and is referred to as the "'192 interference." Shortly thereafter, on September 20, 1998, Martin and Scimed entered into an option and license agreement under which Scimed had an exclusive option to purchase the rights to Martin's '817 patent. Neither Scimed nor Martin disclosed the existence of this agreement to Medtronic or the Board before the Board rendered its decision in the '192 interference.[2]

The Board yielded its decisions pertaining to the '192 interference on July 27, 2001. Scimed filed a complaint in this Court on September 25, 2001, challenging the Board's decisions that were adverse to its interests in the '402 application. Subsequently, Scimed filed an amended complaint on November 9, 2001, and a second amended complaint on December 21, 2001. Defendant Medtronic filed its answer to the second amended complaint and its counterclaim on January 2, 2002. In turn, Scimed filed its answer to Medtronic's

counterclaim on January 18, 2002, and then separately filed a motion to dismiss the counterclaim almost five months later, on May 17, 2002, arguing that this Court lacks subject matter jurisdiction to hear Medtronic's claims.

As defendant and counterclaim-defendant Martin never filed an answer to Medtronic's counterclaim, Medtronic filed a motion for default judgment against Martin on April 23, 2002.[3] In its motion for default judgment, Medtronic asked this Court not only to grant default judgment as to Martin, but also as to Scimed for Martin's failure to answer the counterclaim. According to Medtronic, because Scimed is the owner of an exclusive license to Martin's '817 patent, it has a duty under that license to litigate all claims stemming from the patent. Under Medtronic's theory, default as to Martin is default as to Scimed, even though Scimed filed a timely answer to the counterclaim.

Additionally, Medtronic brings a Rule 11 motion for sanctions against Scimed, coincidentally filed on the same day as Scimed's motion to dismiss Medtronic's counterclaim. Medtronic argues that Scimed has materially misrepresented its relationship with Martin as to whether Scimed or Martin owns all right, title, and

application to Boston Scientific Technology, Inc., which merged into plaintiff Scimed. Scimed is now the present legal owner of the '402 application. Defendant and counterclaimant Medtronic was assigned its rights in a patent application for the invention by Thomas J. Fogarty, Timothy J. Ryan, and Kirsten Freislinger (collectively referred to as party "Fogarty" in the underlying proceedings at the USPTO). That application was filed with the USPTO on June 5, 1995, and assigned the serial number 08/463,836 (the "'836 application"). Fogarty assigned its rights in the '836 application to Medtronic Aneurx, Inc., which merged into Medtronic AVE, Inc. Defendant Medtronic is now the legal owner of the '836 application.

2. Scimed disclosed the existence of the agreement with Martin on March 21, 2002; Medtronic maintains that the disclosure was untimely and in violation of the pertinent regulations contained in 37 C.F.R. § 1.602. *See* Medtronic Mot. for Default Judgment at 3–4. Scimed contends that the disclosure was timely and proper. As this issue is irrelevant to the Court's resolution of the motions now before it, the Court will not consider the parties' arguments on this issue at this time.

3. The Clerk of Courts made an entry of default against Martin on the same day.

interest in the '817 patent. Due to these alleged misrepresentations, Medtronic asks the Court to dismiss this case "as sanction for Scimed's conduct and Martin's collusion in that conduct." Medtronic Mot. for Sanctions at 10.

## II. ANALYSIS

### A. Scimed's Rule 12(b)(1) Motion to Dismiss Medtronic's Counterclaim for Lack of Subject Matter Jurisdiction is Denied

Scimed asks this Court to dismiss Medtronic's counterclaim against it and against Martin pursuant to Federal Rule of Civil Procedure 12(b)(1), claiming that the Court lacks subject matter jurisdiction under 35 U.S.C. § 146 to hear Medtronic's claim.[4] The Court disagrees, and denies Scimed's motion to dismiss.

In its counterclaim against Scimed and Martin, Medtronic asks this Court, in essence, to affirm the Board's decisions that were favorable to Medtronic, reverse those that were not, and to adjudge that Medtronic is entitled to a Letters Patent of the United States for the bifurcated lumen invention. *See* Medtronic Counterclaim at 10. At issue for purposes of Scimed's motion to dismiss are three preliminary motions filed by Fogarty—who assigned its rights in the patent application to Medtronic—with the Board. In Preliminary Motion No. 1, Fogarty argued that the claims contained in the Cragg/Scimed patent application were not patentable. Additionally, in Preliminary Motion No. 3, Fogarty challenged any benefit awarded to the Cragg/Scimed patent application due to an earlier filing date of a European patent application. Finally, Fogarty alleged in Preliminary Motion No. 4 that certain claims in Martin's patent and in the Cragg/Scimed patent application were unpatentable.

The Board denied each of these motions on February 11, 2000. Six months later on August 14, 2000, the Board asked Fogarty "to file a paper identifying all [previous] motion decisions adverse to party Fogarty which Fogarty believes still must be considered at final hearing even if all issues raised by Party Cragg [Scimed] for final hearing are decided against party Cragg." Scimed Mot. to Dismiss at 2. In response, Fogarty submitted to the Board that Preliminary Motion Nos. 1, 3, 4, among others, "would become moot and need not be considered in the event judgment is entered against Cragg. (While the motions thus need not be reviewed, reference to Cragg's position and/or the Board's rulings with respect to certain of these may still be required.)." At the final hearing before the Board on the '192 interference, Preliminary Motions 1, 3 and 4 were neither discussed by Cragg or Fogarty nor briefed by the parties as part of the proceeding. When the Board rendered its decision on July 27, 2001 awarding priority of invention to the '836 or Fogarty/Medtronic application over the '402 or Cragg/Scimed application, the judgment did not address any of the issues raised in Fogarty's Preliminary Motions 1, 3 and 4. *See* Medtronic Mot. for Default Judgment, Exh. A (Board's Op. in the '192 interference).

Despite the fact that the issues were never briefed by the parties nor discussed by the Board during the final hearing proceedings on the '192 interference, Medtronic now asks this Court to reverse the Board's rejection of Fogarty Preliminary

---

4. Section 146 provides, in relevant part, that "Any party to an interference dissatisfied with the decision of the Board of Patent Appeals and Interferences on the interference, may have remedy by civil action, if commenced within such time after such decision, not less than sixty days . . . ."

Motions 1, 3 and 4. Both Medtronic and Scimed primarily cite the same cases as support for their arguments regarding this Court's subject matter jurisdiction to hear Medtronic's counterclaim: *Conservolite, Inc. v. Widmayer*, 21 F.3d 1098, 1102 (Fed. Cir.1994) and *General Instrument Corp. v. Scientific–Atlanta*, 995 F.2d 209, 214 (Fed.Cir.1993).

■ While the cases provide some guidance, they are not factually analogous to the situation presently before the Court. In *Conservolite*, the party bringing a Section 146 action in district court asked the court to consider an issue that the party did not raise either by preliminary motion or at the final hearing. The Federal Circuit in *Conservolite* held that a party's failure to raise the issue in a preliminary motion not only precluded it not from raising the matter at the final hearing, but also precluded district court review. *See Conservolite*, 21 F.3d at 1101. Here, the situation before the Court is different. Unlike the party that brought a Section 146 action in *Conservolite*, Medtronic raised in Preliminary Motions 1, 3, and 4 the same issues it now brings in its counterclaim, although those issues were not addressed at the final hearing.

The Court must therefore determine whether failure to introduce an issue during a final hearing on an interference—even if the issue was raised by preliminary motion—prevents a district court from considering the issue during a Section 146 action. While *Conservolite* states that "an action under § 146 is essentially a proceeding to review the action of the Board," *id.*, the Court cannot conclude that it stands for the proposition that Scimed advances: that district courts lack subject matter jurisdiction over issues raised in preliminary motions but not addressed at a final hearing. *See* Scimed Reply at 4 (arguing that "[i]f an issue is not raised at final hearing or considered in the Board's final decision, it cannot be raised in a Section 146 action."). The Federal Circuit's opinion in *Conservolite* recognizes as much when it states that "[i]n order for an issue to have been raised adequately so that it qualifies for consideration in a Section 146 proceeding, the issue should have been raised as specified in the PTO's interference rules, for example, *through preliminary motions*, motions to correct inventorship, miscellaneous motions, belated motions delayed for good cause, or opposition to these motions." *Id.* at 1102 (emphasis added). Medtronic complied with that requirement by bringing Preliminary Motions 1, 3, and 4. *See* Scimed Reply at 5. Neither *Conservolite*, nor the pertinent statute and regulation, require more. *See* 35 U.S.C. § 146; 37 C.F.R. § 1.658.

Furthermore, the Court does not believe that allowing Medtronic to raise issues here that were not specifically briefed or raised during the final hearing to be inconsistent with the general principle that administrative remedies must be exhausted before seeking district court review. This is especially true because the Board itself limited the issues to be considered at the final hearing when it asked Medtronic to list only those issues Medtronic believed "still must be considered at final hearing *even if all issues raised by Party Cragg [Scimed] for final hearing are decided against party Cragg.*" Scimed Mot. to Dismiss at 2. Medtronic's answer to that question was a qualified one: only if all issues were decided against Cragg were Medtronic's preliminary motions moot. As the Board limited the issues to be considered, and because Fogarty/Medtronic raised the issues in preliminary motions which were denied by the Board, the Court concludes that permitting Medtronic to bring them here in its counterclaim is "not wasteful of administrative and judicial

resources." *Conservolite*, 21 F.3d at 1102. Moreover, the Court does not find Medtronic waived its claims for the same reasons it finds that Medtronic sufficiently exhausted its administrative remedies.

For the reasons set forth above, the Court denies Scimed's motion to dismiss Medtronic's counterclaim.

### B. Medtronic's Motion for Default Judgment Against Scimed is Denied

■ Medtronic has moved for default judgment against Scimed under the theory that Scimed was the true party-in-interest to Martin's patent, and had a duty to defend Martin in all litigation arising from that patent. Default against Martin, under the defendant's theory, is also default against the plaintiff, Scimed.

■ The standard in this court for granting a motion for default judgment is set forth in *Jackson v. Beech*, 636 F.2d 831 (D.C.Cir.1980), as well as Rule 55 of the Federal Rules of Civil Procedure. In *Jackson*, the Circuit Court specifically explained that default judgment is disfavored when it stated that "modern federal procedure favors a trial on the merits over a default judgment," and that default judgment is normally reserved for a "totally unresponsive party." *Id.* at 835. Scimed, in this case, has not been a totally unresponsive party. It has filed its opposition to the motion for default judgment and the motion for sanctions in a timely manner. It cannot be said that Scimed is being unresponsive or otherwise dilatory in defending its interests.

This Court has been unable to find support in the law for entering default judgment against a party because that party has a duty to defend a second party, who is truly in default for failing to appear or is totally responsive, under a licensing agreement. Those cases where a duty to defend has resulted in default judgment have been limited to cases between an insured and an insurer—where there has been privity in contract between those parties, and the insured, rather than a third party, sought to enforce the contract and the insurer's duty to defend. *See, e.g., Weiss v. St. Paul Fire and Marine Ins. Co.* 283 F.3d 790 (6th Cir.2002); *Pershing Park Villas Homeowners Assoc. v. United Pacific Ins. Co.*, 219 F.3d 895 (9th Cir.2000). The Court does not find support for a third party—like Medtronic—seeking to enforce a contractual duty to defend between two other parties in order to obtain default judgment.

■ In any event, Medtronic has not satisfied the test set for granting default judgment set forth by this Circuit in *Combs v. Nick Garin Trucking*, 825 F.2d 437 (D.C.Cir.1987). The Court in *Combs* listed three factors to consider when setting aside default judgment, which is relevant to this Court's determination as to whether default judgment is appropriate in the first place: whether the default was willful, whether denying default judgment would prejudice the moving party, and whether the alleged defense—here, the plaintiff's claim—is meritorious. As mentioned previously, the Court does not find willful default in this case. Scimed has been responsive to every pleading and motion. The court also does not find that denying default judgment would prejudice Medtronic at this early stage in the proceedings.

■ Given this Circuit's disfavor toward default judgment and strong preference for adjudication of claims on their merits, if Medtronic's position is as truly meritorious as it claims in its papers, a motion for summary judgment would be the proper procedure for addressing which party is the true party at interest in the Martin patent. A motion for default judgment should not be used as a motion in limine to

prevent a party from presenting proofs or making claims.

For those reasons set forth above, Medtronic's motion for default judgment against Scimed is denied.

### C. Medtronic's Motion for Default Judgment Against Defendant and Counterclaim Defendant Martin is Granted

■ Although the Court denies Medtronic's motion for default judgment against Scimed, the Court grants its motion for entry of default judgment as to Martin, but reserves ruling on what relief should be granted.

Applying the *Combs* test, discussed above, the Court finds that Medtronic has satisfied the first requirement by showing that Martin's default is willful. Martin has been served with copies of the pleadings and motions filed in this case. He has not responded to Scimed's complaint, Medtronic's counterclaim, or Medtronic's motion for default judgment. However, Martin has retained counsel and filed a declaration included as Exhibit 5 to Scimed's opposition to Medtronic's motion for entry of default judgment. Given that he has retained counsel, has received copies of all pleadings and motions filed in this case, and has been a "totally unresponsive party" to this filings, *Jackson*, 636 F.2d at 836, the Court can only conclude that Martin's default is willful, rather than the result of negligence on his or his attorney's part.

As Martin has neither opposed the entry of default judgment against him nor suggested he may have a meritorious defense to Medtronic's counterclaim, the Court

need not consider the remaining two prongs of the *Combs* test. Although Martin has willfully defaulted, the question of the relief to which Medtronic is entitled due to his default is a complicated one. In its motion for default judgment, Medtronic, in essence, asks this Court to reverse the Board's decisions that are adverse to Medtronic's interest in the '836 patent application, and affirm those that are favorable.[5] Entering a judgment against Martin for this relief, however, necessarily gives Medtronic the relief it seeks against Scimed as well—relief the Court denied to Medtronic when it rejected its motion for default judgment against Scimed. The Court cannot see how it is possible to enter default judgment against Martin without also simultaneously, and inadvertently, entering judgment against Scimed on the underlying issues of Medtronic's counterclaim.

While finding that Martin is in default, the Court will therefore reserve entering judgment against Martin until Medtronic's counterclaim is adjudicated on the merits.

### D. Medtronic's Rule 11 Motion for Sanctions Against Scimed is Denied

■ Medtronic charges that Scimed has made misrepresentations to the Court that "go to the core of the dispute between the parties," Medtronic Mot. for Sanctions at 1, and requests that this Court sanction Scimed for this alleged misconduct by dismissing its complaint. The Court declines to do so.

The charges made in Medtronic's motion for sanctions and Scimed's opposition go,

---

5. Specifically, Medtronic asks this Court to grant the following relief:

(1) Reversing the Patent Board's decision concerning Fogarty's Preliminary Motion No. 4;

(2) Reversing those portions of the Patent Board's decision of July 27, 2001 with

regard to the '192 interference that are adverse to Fogarty; and

(3) Adjudging that Medtronic is entitled to a Letters Patent of the United States for the invention disclosed in the '836 Application

Medtronic Mot. for Default Judgment at 5.

as Medtronic notes, to the heart of this case: which party is entitled to the rights for the bifurcated lumen patent. To resolve the motion for sanctions either in Scimed's or Medtronic's favor, the Court must necessarily resolve the merits of the underlying dispute without the benefit of discovery. To do so at this stage in the litigation would not be fair to either side. Therefore, without ruling one way or the other as to the factual allegations contained in Medtronic's motion and Scimed's opposition, the Court denies Medtronic's motion for sanctions.

### III. CONCLUSION

For the reasons set forth above, the Court hereby:

GRANTS Medtronic's motion for entry of default judgment against Martin (# 17), but reserves ruling on the relief to which Medtronic is entitled;

DENIES Medtronic's motion for default judgment as to Scimed (# 17);

DENIES Scimed's motion to dismiss Medtronic's counterclaim (# 22); and

DENIES Medtronic's motion for sanctions (# 23).

In addition the Court also:

GRANTS Scimed's motion for Gideon Stern to appear *pro hac vice* for Scimed (# 29); and

GRANTS Scimed's motion for leave to file the Patent Office's Decision to Pending Motions (# 34).

SO ORDERED.