**INVITROGEN CORPORATION,**
Plaintiff,

v.

**PRESIDENT AND FELLOWS OF HARVARD COLLEGE,**
Defendant.

**Civil Action No. 07–10917–NMG.**

United States District Court,
D. Massachusetts.

Aug. 12, 2008.

Claire Bishop, Abely Foley & Lardner, LLP, Boston, MA, for Defendant.

David M. Bennion, Parsons Behle & Latimer, Salt Lake City, UT, Todd R. Walters, Buchanan Ingersoll P.C., Alexandria, VA, for Plaintiff.

David B. Chaffin, Hare & Chaffin, Michael R. Gottfried, Duane Morris LLP, Boston, MA, Francis M. Wikstrom, Parsons Behle & Latimer, Salt Lake City, UT, for Counter Defendant, Invitrogen Corporation.

George Quillin, Foley & Lardner LLP, Washington, DC, Michael J. Tuteur, Foley & Lardner LLP, Boston, MA, Richard J. Warburg, Foley & Lardner LLP, San Diego, CA, for Counter Claimant, President and Fellows of Harvard College.

## MEMORANDUM & ORDER

GORTON, District Judge.

In this case involving a patent dispute, the defendant has filed a motion for summary judgment.

### I. *Background*

#### A. Factual Background

The plaintiff, Invitrogen Corporation ("Invitrogen"), brings this lawsuit to remedy the decisions and judgments of the Board of Patent Appeals and Interferences ("the Board") of the United States Patent and Trademark Office ("USPTO") as provided for by 35 U.S.C. § 146. Invitrogen claims that it, rather than the defendant, President and Fellows of Harvard College ("Harvard"), is entitled to a patent for the invention in dispute.

On April 6, 2005, the USPTO declared an interference which means that it determined that two parties had filed patent applications with claims directed to substantially the same invention. The interference arose between United States Patent Application Serial No. 09/558,421 ("the Chatterjee application") and United States Patent No. 5,614,365 ("the Tabor Patent"). Deb K. Chatterjee ("Chatterjee") is an

inventor who has assigned his right, title and interest in the relevant patent applications to Invitrogen. Stanley Tabor ("Tabor") and Charles Richardson ("Richardson") are inventors who have assigned their rights in the relevant patents to Harvard. The Chatterjee application and Tabor patent relate to molecular cloning and expression of mutant DNA polymerases.

When an interference occurs, the Board decides which party is entitled to a patent or, in other words, determines "priority and patentability of invention". 35 U.S.C. § 6(b). In the interference between the Chatterjee application and the Tabor patent ("the Interference"), the Board designated Invitrogen as the "Junior Party" because it filed its first relevant application on September 8, 1995, almost one year after Harvard. As Junior Party, Invitrogen has the burden to show that it had priority of invention prior to Harvard's application filing date of October 17, 1994.

On March 15, 2007, the Board determined that Chatterjee failed to show an actual reduction to practice ("ARTP") of an embodiment of the invention prior to Harvard's application filing date. Specifically, the Board determined that Chatterjee had failed to show an ARTP on two particular dates that he relied on to show his alleged earlier invention, September 12, 1991 and July 29, 1994.

Invitrogen requests that this Court reverse all portions of the Board's March 15, 2007 decision. Specifically, it asks this Court to declare that: 1) Chatterjee is the first inventor, 2) Invitrogen is entitled to the patent, 3) all claims of the Tabor patent are unpatentable and 4) Invitrogen is entitled to an award of its costs, including reasonable attorneys' fees.

## B. Procedural History

On March 15, 2007, the Board issued its decision with regard to the Interference.

No party to the Interference has appealed the decision to the United States Court of Appeals of the Federal Circuit as permitted under 35 U.S.C. § 141. On May 15, 2007, Invitrogen filed a complaint in the Southern District of California as well as in the District of Massachusetts. The complaint in the District of Massachusetts was not served on Harvard until September 12, 2007. Harvard answered the complaint denying all substantive allegations and asserting counterclaims that interposed various reasons why Invitrogen's claims should not be patented on October 2, 2007. The complaint in the Southern District of California was dismissed on October 10, 2007 after the parties filed a joint motion to dismiss without prejudice. On October 25, 2007 Invitrogen filed a motion to dismiss Harvard's counterclaims and to strike its affirmative defenses which Harvard opposed and the Court denied at a subsequent scheduling conference. Harvard's motion for summary judgment, filed on November 26, 2007, is opposed.

## II. Defendant's Motion for Summary Judgment

### A. Legal Standard for Summary Judgment

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991)(quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990)). The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing

law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. *O'Connor v. Steeves,* 994 F.2d 905, 907 (1st Cir.1993). If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.

### B. Legal Standard for Interference Cases

 A party dissatisfied with the decision of the Board on an interference claim may commence a civil action. 35 U.S.C. § 146. The record from the proceedings before the Board may be admitted on the motion of either party but "without prejudice to the right of the parties to take further testimony." *Id.* "The testimony and exhibits of the record [from the Board proceedings] ... shall have the same effect as if originally taken and produced in the suit." Id. When the district court admits live testimony on matters presented to the Board, it conducts a trial de novo. *Winner Int'l Royalty Corp. v. Wang,* 202 F.3d 1340, 1347–48 (Fed.Cir. 2000). When no live testimony is admit-

ted, the district court reviews the Board's factual findings for substantial evidence. *Mazzari v. Rogan,* 323 F.3d 1000, 1005 (Fed.Cir.2003).

The statute permitting review in the district court does not make clear when the district court should and should not permit live testimony. The Federal Circuit has held that parties, in a § 146 proceeding, may not raise new issues in the district court. *Conservolite, Inc. v. Widmayer,* 21 F.3d 1098, 1102 (Fed.Cir.1994). The extent to which a party may present evidence in the district court not introduced and/or inappropriately cited in the proceedings before the Board is less clear.

### C. Analysis

 In its motion for summary judgment, Harvard moves this Court to declare that neither Invitrogen's alleged ARTP on September 12, 1991 nor its alleged ARTP on July 29, 1994 can be proven on the evidence available in the action and that Invitrogen is now precluded from presenting new evidence and alleging any other dates of ARTP. Harvard argues that this Court can issue judgment in this case based on the record from the proceedings before the Board without hearing live testimony. It claims that 1) Invitrogen failed to establish ARTP because of insufficient evidence presented to the Board, 2) Invitrogen cannot introduce new issues, evidence or dates of alleged ARTP that were not properly presented to the Board and 3) the Board's decisions were supported by sufficient evidence and therefore should be upheld by the Court.

#### 1. The Appropriateness of Taking Further Testimony in This Case

Because summary judgment would be appropriate at this stage of the case only if the Court does not permit further testimo-

ny, the Court will begin by considering whether such testimony should be taken.

### a. The Arguments and Legal Landscape

Harvard contends that Invitrogen may not present new evidence or issues in this § 146 action that were not properly presented during the interference proceedings. Although Harvard concedes that 35 U.S.C. § 146 grants a "right of the parties to take further testimony", it asserts that such a right does not confer an unlimited license to present evidence to the district court that was not properly presented to the Board during the interference proceeding.

The Federal Circuit has made it clear that new *issues* may not be raised in the district court that were not raised before the Board but the extent to which new *evidence* (or evidence not properly cited) may be presented in the district court is undecided. *See, e.g., Conservolite*, 21 F.3d at 1102; *Gen. Instrument Corp. v. Scientific–Atlanta, Inc.*, 995 F.2d 209, 214 (Fed. Cir.1993) (holding, once again, that the Court had no occasion to decide whether "a district court may properly restrict the admission of testimony on an issue raised before the [B]oard.") (quoting *Case v. CPC Int'l, Inc.*, 730 F.2d 745, 752 (Fed.Cir. 1984)). Another session of this Court determined that new testimony may not be introduced in the district court that was not introduced before the Board unless the party seeking to introduce the testimony shows that the evidence could not have been introduced despite due diligence. *Cell Genesys, Inc. v. Applied Research Sys. ARS Holding N.V.*, 499 F.Supp.2d 59, 61, 74–75 (D.Mass.2007). In that case, however, unlike this one, the information was not produced at all for the Board. Here, some of the information was produced but inappropriately cited in the ar-

gument section of the brief making it difficult for the Board to find it.

Following the framework of *Cell Genesys*, Harvard contends that Invitrogen cannot demonstrate special circumstances. Prior to filing its principal brief with the Board, Invitrogen had prosecuted its case for over ten years, had all relevant documents in its possession and had access to the inventor and the other individuals who were aware of the alleged inventive activities at the relevant times. Harvard also notes that Invitrogen asserted over 1,000 facts based upon thousands of pages of notebooks and affidavits but its arguments regarding ARTP included citations to only four of the facts and referred to only a handful of exhibits. The Board considered only the evidence and facts that Invitrogen specifically cited in its principal brief. Consequently, Harvard concludes that Invitrogen cannot now make a showing of special circumstances.

Invitrogen responds that all of the issues raised by Harvard in its motion relate to the issue of reduction to practice which Invitrogen raised before the Board. It asserts that the Board wanted more explanation of the evidence relating to Dr. Chaterjee's ARTP and that live testimony would provide such information. Harvard replies that live testimony is unnecessary with respect to the issues raised in Invitrogen's principal brief because the Board's decision was based on legal issues which did not require it to weigh the veracity of the written testimony in order to reach its decision.

### b. The Issues and Evidence Presented to the Board and the Board's Decision

In order to determine whether live testimony is appropriate in this case, it is necessary, first, to consider what evidence and issues the parties presented to the

Board, the Board's decision and the basis for that decision.

The Board's decision focuses on whether Charterjee had a successful ARTP prior to Harvard's application date of October 14, 1994. In order to establish an ARTP, the inventor must prove that he constructed an embodiment that met all of the limitations of the interference count and that he determined that the invention would work for its intended purpose. *Cooper v. Goldfarb,* 154 F.3d 1321, 1327 (Fed.Cir.1998). In this particular case, Invitrogen must establish that the inventor 1) made a mutant DNA molecule (gene) that encodes a mutant DNA polymerase and 2) performed a successful experiment demonstrating that the mutant DNA polymerase has DNA polymerase activity. It suggests that the inventor's knowledge that he would be able to do those two things is enough to establish ARTP. *See Hahn v. Wong,* 892 F.2d 1028, 1032 (Fed.Cir.1989).

Invitrogen relied in its brief to the Board ("principal brief") and relies in its complaint here on two specific dates to establish the requisite ARTP: September 12, 1991 and July 29, 1994. Invitrogen also asserts in its opposition to the motion for summary judgment, however, that it presented an alternative date of September 6, 1994 to the Board and that it has provided sufficient evidence with respect to that date.

With respect to the September 12, 1991, date, the only evidence cited to the Board in support of ARTP on that date are laboratory notebook pages and one paragraph of a declaration by John Hughes ("Hughes"), an inventor working with Chatterjee. No affidavit was cited to explain the pages despite a Board Rule which requires an affidavit to support such technical data. See 37 C.F.R. § 41.158(b). Invitrogen attempted to submit an affidavit in its reply brief and during oral argu-

ment but the Board refused to consider it because it was not timely presented. Invitrogen also failed to cite evidence from anyone other than the inventor for the 1991 date and an inventor's own documentation requires corroboration. *See Brown v. Barbacid,* 276 F.3d 1327, 1335 (Fed.Cir. 2002). As Invitrogen points out, it did submit declarations from Chatterjee and Brian Schmidt as well as 18 others with respect to that date but it did not cite to those declarations in its brief or supporting facts.

The Board found the evidence Chatterjee submitted with respect to the 1991 date to be insufficient to demonstrate ARTP. It noted that Chatterjee did not direct its attention to any credible testimony that explains how 1) the experiments were conducted, 2) any values reported were determined from the raw data and 3) those experiments suffice as reasonable proof that the invention worked for its intended purpose. The notebook pages which Chatterjee cited were "too terse" to enable the Board to make findings of fact as to their meaning or importance. Invitrogen had a burden of explaining its evidence and it failed to do so. The Board specifically found that a party must argue its case and that it "will not act as an advocate for a party that has failed to argue its case".

With respect to the July 29, 1994 date, the Board found that Chatterjee had not presented sufficient information to demonstrate that he performed any of the experiments he claims showed the invention worked for its intended purpose. Although by July 29 Chatterjee had in his possession a nucleotide chain that would aid in the creation of a DNA molecule that could produce the mutant DNA polymerase, Chatterjee had not created the DNA molecule by July 29, 1994. In fact, the Board found that by the end of July, 1994, Chaterjee had not developed or cloned the

DNA molecule, produced the mutant DNA polymerase or verified that the mutant DNA polymerase had polymerase capabilities. The Board concluded that Chatterjee had failed to demonstrate an ARTP on the 1994 date because he lacked any credible supporting evidence.

### c. Whether Further Testimony Will Be Admitted

As an initial matter, to the extent that Invitrogen seeks to introduce evidence with respect to the alternative ARTP date of September 6, 1994, that evidence would be barred. In its principal brief, Invitrogen argued only two specific dates for ARTP and, as a result, those dates are the only issues that may be properly and timely raised by Invitrogen. In fact, the Board did not consider information about the September, 1994 date raised by Invitrogen at oral argument because, although experiments after the July, 1994 date were mentioned in Chatterjee's supporting declaration, the September, 1994 date was not argued as an ARTP date in its principal brief. Consequently, Invitrogen waived that issue before the Board and may not present it to the district court. *See Conservolite, Inc. v. Widmayer*, 21 F.3d 1098, 1102 (Fed.Cir.1994).

■ Determining whether live testimony is appropriate with respect to the other two alleged ARTP dates is more difficult but, ultimately, after very close scrutiny of the case law and the prior proceedings before the Board, the Court concludes that it should not hear such evidence.

Although 35 U.S.C. § 146 does not address the issue of when it is appropriate for a district court to permit live testimony, the Federal Circuit has, on several occasions, considered a district court's role in reviewing Board decisions. The Federal Circuit has indicated that

the parties to an interference must make a complete presentation of the issues at the Board level so that the interference is efficient and not wasteful of administrative and judicial resources.

. . .

A proceeding under § 146 is not a chance for a party to reconstruct its case . . . leapfrogging the administrative process in the PTO.

*Conservolite*, 21 F.3d at 1102.

■ In the *Conservolite* case, the Federal Circuit addressed the introduction of new issues rather than new evidence but this Court finds its reasoning persuasive with respect to the latter as well. In order to ensure that the proceeding before the Board does not become a rehearsal for a subsequent district court case, the parties in an interference are not permitted to reconstruct their cases in the district court when they are unsuccessful before the Board. The introduction of further testimony in the district court should occur only in those cases in which 1) there are questions of credibility, 2) the Board has to decide conflicting versions of facts (such as when there are conflicting expert opinions) *or* 3) the evidence was not available despite due diligence at the time of the Board proceedings. *See, e.g., Cell Genesys*, 499 F.Supp.2d at 74–75.

In this case, admitting further testimony would be inappropriate. Because Invitrogen failed to present sufficient evidence to establish a prima facie case of ARTP during the proceedings before the Board, it will not, here and now, be permitted to supplement that information with evidence available but not adequately presented to the Board. With respect to the 1991 ARTP date, the Board found that the lab notebook pages and the affidavit of Hughes were insufficient as a matter of law to establish ARTP. That conclusion did not require the Board to consider credibili-

ty or to resolve conflicts with respect to the facts but rather was based on a lack of evidence presented. To support the facts purportedly establishing the 1991 ARTP date, Chatterjee cited notebook pages and Hughes's declaration. Under PTO rules, an inventor's own documentation must be corroborated by someone else. Moreover, in reaching its conclusion, the Board did not assess the credibility of Hughes or Chatterjee or the unexplained notebook pages but simply discounted the inventors' statements under its rules and could not understand the notes submitted. Although live testimony might be helpful to explain those notebook pages and to bolster the inventors' declarations, Invitrogen had an opportunity to reference such information for the Board in its principal brief but failed to do so. It will not now get a "do over" in this Court.

With respect to the 1994 ARTP date, the Board likewise found that Chatterjee had failed to establish a prima facie case. In making its determination, the Board was not required to make any determination of credibility or to resolve issues of fact. In fact, the Board assumed that all of the cited facts were true but determined, nonetheless, that Chatterjee's factual assertions did not establish, as a matter of law, an ARTP at the end of July, 1994. Having made such a determination, Invitrogen may not now introduce additional evidence that was available but not properly introduced at the Board proceeding.

## 2. The Substantial Evidence Test

Having determined that live testimony is inappropriate in this case, the Court reviews the record and the Board's factual findings for substantial evidence. *Mazzari v. Rogan*, 323 F.3d 1000, 1004 (Fed.Cir.2003). A review of the Board's findings establishes that they were sup-

ported by substantial evidence. The Board was essentially unable to make factual findings with respect to the September, 1991 ARTP date. Chaterjee cited, as supporting evidence, only the unexplained notebook pages and Hughes's declaration. The notebook pages are not indicative of what, if anything, Chatterjee had accomplished as of September, 1991 and, under Board Rules, it may not rely on the inventor's own declaration to establish facts regarding ARTP. Consequently, the Board's conclusion that there are no factual findings with respect to the September, 1991 ARTP is supported by substantial evidence.

There is also substantial evidence to affirm the Board's finding with respect to the alleged July 29, 1994 ARTP. For purposes of its hearing, the Board accepted all of the facts alleged by Chatterjee, i.e., that he had ordered and received an oglionucleotide and had an idea about how to use it to create the DNA polymerase. Chatterjee's declaration and an order form confirm those facts. The Board also found that by July 29, 1994, Chatterjee had not created the DNA molecule or the mutant polymerase and, consequently, had not confirmed that the polymerase had the relevant polymerase activity. Those facts are also confirmed by Invitrogen's brief and statement of facts.

## 3. Conclusions of Law

Having determined that the Board's factual findings are supported by substantial evidence, it is for this Court to determine, as a matter of law, whether the facts as found by the Board established an ARTP. The Court agrees with the Board that, as a matter of law, Chatterjee did not establish an ARTP for the two dates he alleged. Having presented insufficient facts for the Board to make any factual findings with respect to the 1991 ARTP

date, Chatterjee failed as a matter of law to demonstrate ARTP on that date. Because the Board found that Chatterjee had not created the DNA molecule, not to mention the polymerase, as of July 29, 1994, he also failed, as a matter of law, to show ARTP on that subsequent date.

Invitrogen argues now, as it did to the Board, that by the end of July, 1994, Chatterjee had "a permanent and definite idea" of the subject polymerase and that such an idea, combined with his prior success in 1991, was sufficient to establish ARTP. The only case cited by Invitrogen in support of its contention discusses the creation of a chemical composition and, in that case, the Federal Circuit explicitly held that ARTP requires that the inventor prepare the composition. *See Hahn v. Wong,* 892 F.2d 1028, 1032 (Fed.Cir.1989). There is no evidence that as of July 29, 1994, Chatterjee had prepared the "composition" (i.e., the DNA molecule that encodes the polymerase or the actual polymerase). Consequently, because 1) the Court will not allow further testimony in this case, 2) the Board's findings of fact are supported by substantial evidence and 3) the Court agrees with the Board's conclusions of law, Harvard's motion for summary judgment will be allowed.

### ORDER

In accordance with the foregoing, Defendant's Motion for Summary Judgment (Docket No. 24) is **ALLOWED.**

**So ordered.**